Johnny Silva JIMENEZ, Appellant,

v.

The STATE of Texas.

No. 1090–99.

Court of Criminal Appeals of Texas, En Banc.

Sept. 13, 2000.

Wayne Heller, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which MANSFIELD, PRICE, HOLLAND, and KEASLER, JJ., joined.

The question in this case is, what standard of harmless error applies to error in a court's charge that was not objected to, and that is claimed to violate a constitutional provision? We hold that the applicable standard is that provided by article 36.19 of the Code of Criminal Procedure: "the judgment shall not be reversed…unless it appears from the record that the defendant has not had a fair and impartial trial."

The appellant, indicted for attempted capital murder, was found guilty of aggravated assault committed on September 11, 1995. The court's charge at punishment told the jury that the appellant "may earn time off the period of incarceration imposed through the award of good conduct time." This charge tracked article 37.07,

section 4(a) of the Code of Criminal Procedure.[1] The appellant did not object to the charge. The jury assessed punishment of fifteen years' imprisonment.

On appeal the appellant presented the point that this charge was erroneous, since an award of good conduct time would not count toward his release on mandatory supervision because his offense is listed in former Article 42.18, section 8(c) of the Code of Criminal Procedure.[2] The First Court of Appeals agreed "that the charge on the accumulation of good-conduct time, as given in this case, was error." *See*

1. "In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is listed in Section 3g(a)(1), Article 42.12, of this code or if the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, of this code, unless the defendant has been convicted of a capital felony the court shall charge the jury in writing as follows:

"Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

"It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

"It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX.CODE CRIM. PROC. art. 37.07 § 4(a).

2. "A prisoner may not be released to mandatory supervision if the prisoner is serving a sentence for an offense and the judgment for the offense contains an affirmative finding under Subdivision (2), Subsection (a), Section 3g, Article 42.12, of this code or if the prisoner is serving a sentence for:

(1) a first degree felony under Section 19.02, Penal Code (Murder);

(2) a capital felony under Section 19.03, Penal Code (Capital Murder);

(3) a first degree felony or a second degree felony under Section 20.04, Penal Code (Aggravated Kidnapping);

(4) a second degree felony under Section 22.011, Penal Code (Sexual Assault);

(5) a second degree or first degree felony under Section 22.02, Penal Code (Aggravated Assault);

(6) a first degree felony under Section 22.021, Penal Code (Aggravated Sexual Assault);

(7) a first degree felony under Section 22.04, Penal Code (Injury to a Child or an Elderly Individual);

(8) a first degree felony under Section 28.02, Penal Code (Arson);

(9) a second degree felony under Section 29.02, Penal Code (Robbery);

(10) a first degree felony under Section 29.03, Penal Code (Aggravated Robbery);

(11) a first degree felony under Section 30.02, Penal Code (Burglary), if the offense is punishable under Subsection (d)(2) or (d)(3) of that section; or

(13) [*sic*] a felony for which the punishment is increased under Section 481.134 (Drug–Free Zones), Health and Safety Code."

Act of June 19, 1993, 73rd Leg., R.S., ch. 888, § 2, 1993 Tex. Gen. Laws 3530, 3531 *and* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 6.02, 1993 Tex. Gen. Laws 3586, 3761, *both repealed by* Act of June 1, 1995, 74th Leg., R.S., ch. 263, § 1, 1995 Tex. Gen. Laws 2592. Now see TEX. GOV'T CODE § 508.149(a).

The appellant's offense was a second degree felony under Penal Code section 22.02, and the judgment contains an affirmative finding regarding a deadly weapon under Code of Criminal Procedure article 42.12, section 3g(a)(2).

*Jimenez v. State,* 992 S.W.2d 633, 638 (Tex.App.—Houston [1st Dist.] 1999).

The appellant argued in the court of appeals that the incorrect charge denied him due process of law and due course of law. The court of appeals agreed, but found that the error was harmless. It said:

> We must determine, under article 36.19 of the Texas Code of Criminal Procedure, whether the error resulted in such harm that it requires reversal of the conviction. Because appellant did not object to the court's charge to the jury, it is appellant's burden on appeal to show the erroneous charge resulted in such egregious harm that he did not receive a fair and impartial trial. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App.1984).

*Ibid.* The court held that the appellant did not show such harm. *Id.* at 639.[3]

Both the appellant and the State petitioned for discretionary review. The appellant asks us to hold that the court of appeals was wrong to apply to a constitutional error the standard of harm in article 36.19 instead of the beyond-a-reasonable-doubt standard in Rule of Appellate Procedure 44.2(a).[4] The State asks us to hold that the court of appeals erred in holding that the charge denied due process of law and due course of the law. We first take up the issue in the appellant's petition.

A party is not excused from the procedural requirements for objecting at trial merely because an error involves a constitutional right. "It has repeatedly been held that even constitutional guarantees can be waived by failing to object properly at trial."[5]

> All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong. Many constitutional rights fall into this category. When we say "that even constitutional guarantees can be waived by failure to object properly at trial," we mean that some, not all, constitutional rights may be forfeited. On the other hand, certain, relatively few, rights must be protected by the system's impartial representatives unless expressly waived by the party to whom they belong. Determining which category a right occupies will usually settle the question of procedural default in the context of a particular case.[6]

The appellant does not contend that the right in question was one that must be implemented unless he expressly waived it.

In particular, the requirements for objecting to the court's charge at trial were established by the enactment of articles 36.14 through 36.17 of the Code of Criminal Procedure.[7]

3. Considering the question of harmless error in the court's charge, we recently held, "We do not resolve the issue by asking whether the appellant met a burden of proof to persuade us that he suffered some actual harm.... No party should have a burden to prove harm from an error, and there ordinarily is no way to prove 'actual' harm. Burdens and requirements of proving actual facts are appropriate in the law of evidence, but they have little meaning for the harmless-error decision." *Ovalle v. State,* 13 S.W.3d 774, 787 (Tex.Cr. App.2000). The court of appeals did not have the benefit of this decision. The appellant asked us to consider only whether the court of appeals used the correct standard, not whether it used the standard correctly. Further discussion of the question of a burden to show harm is not necessary to the decision of the case.

4. "Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex.R.App. P. 44.2(a).

5. *Gibson v. State,* 516 S.W.2d 406, 409 (Tex. Cr.App.1974).

6. *Marin v. State,* 851 S.W.2d 275, 279 (Tex.Cr. App.1993) (citation omitted).

7. "Subject to the provisions of Article 36.07 in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury

Standards for review of error in the has been waived, a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury. Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts, and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided. The requirement that the objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and objections presented to the charge and any amendment or modification thereof. In no event shall it be necessary for the defendant to except to the action of the court in over-ruling defendant's exceptions or objections to the charge."

TEX.CODE CRIM. PROC. art. 36.14.

"Before the court reads his charge to the jury, counsel on both sides shall have a reasonable time to present written instructions and ask that they be given to the jury. The requirement that the instructions be in writing is complied with if the instructions are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. The court shall give or refuse these charges. The defendant may, by a special requested instruction, call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exception or objection to the court's charge shall be necessary to preserve any error reflected by any special requested instruction which the trial court refuses.

Any special requested charge which is granted shall be incorporated in the main charge and shall be treated as a part thereof, and the jury shall not be advised that it is a special requested charge of either party.

court's charge were established by the enactment of article 36.19.[8] As this court

The judge shall read to the jury only such special charges as he gives.

When the defendant has leveled objections to the charge or has requested instructions or both, and the court thereafter modifies his charge and rewrites the same and in so doing does not respond to objections or requested charges, or any of them, then the objections or requested charges shall not be deemed to have been waived by the party making or requesting the same, but shall be deemed to continue to have been urged by the party making or requesting the same unless the contrary is shown by the record; no exception by the defendant to the action of the court shall be necessary or required in order to preserve for review the error claimed in the charge."

*Id.* art. 36.15

"After the judge shall have received the objections to his main charge, together with any special charges offered, he may make such changes in his main charge as he may deem proper, and the defendant or his counsel shall have the opportunity to present their objections thereto and in the same manner as is provided in Article 36.15, and thereupon the judge shall read his charge to the jury as finally written, together with any special charges given, and no further exception or objection shall be required of the defendant in order to preserve any objections or exceptions theretofore made. After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 36.15. The failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the appellate court."

*Id.* art. 36.16

"The general charge given by the court and all special charges given or refused shall be certified by the judge and filed among the papers in the cause."

*Id.* art. 36.17.

8. "Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure

held in *Almanza,* article 36.19 established two standards of review for errors in the court's charge: one standard for errors that were objected to and another for those that were not objected to.

■ If an appellant did object to the error in the charge, the statutory standard of harmlessness for most erroneous charges is that "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant"; [9] in other words, unless the appellant suffered "some harm." [10] That statutory standard of review does not apply to some kinds of charge errors that were objected to. If the error was a violation of the federal constitution that did not amount to a structural defect, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. [11]

the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial."

TEX.CODE CRIM. PROC. art. 36.19.

9. *Id.*

10. *See Almanza,* 686 S.W.2d at 171.

11. *See Beathard v. State,* 767 S.W.2d 423, 430 (Tex.Cr.App.1989).

12. The statutory standards do not apply to two other kinds of error in the charge even though they were objected to: structural error and an unconstitutional statute.

Some federal constitutional errors that "are structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards," are not subject to the harmless-error doctrine. *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The error in this case is not a structural defect in the constitution of the trial mechanism. The Supreme Court has said, "We have found structural errors only in a very limited class of cases: a total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of defendant's race, the right to self-representation at trial, the right to a public trial, [and an] erroneous reasonable-doubt instruction to the jury." *Johnson v.*

That standard was the one the court of appeals applied in this case. [12]

■ But the "beyond-a-reasonable-doubt" standard for constitutional errors does not apply in this case because the error was not objected to. In *Chapman v. California,* the Supreme Court held that the courts of states are required to apply the "beyond-a-reasonable-doubt" standard to federal constitutional errors because:

Whether a conviction for crime should stand when a State has failed to accord federal constitutionally guaranteed rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied. With faithfulness to

*United States,* 520 U.S. 461, 468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citations omitted).

If the error in the charge was "the application of an unconstitutionally infirm statute to a defendant," the general harmless-error test for errors other than charge errors applies. *See Rose v. State,* 752 S.W.2d 529, 553 (Tex. Cr.App.1987). The charge in this case did not result from the application of an unconstitutionally infirm statute. The reference to an "unconstitutionally infirm statute" was to one that was "*passed* in contravention of the Texas Constitution's due course and separation of powers provisions." *Ibid.* (emphasis added). Such a statute (in that case, the first parole-instruction statute) is void and its application in any trial would be unconstitutional. The Court said that such a " 'statutory' error should be distinguished from charging error as envisioned by Article 36.19...and *Almanza,*" because it did not involve a violation of article 36.14. *See ibid.* On the other hand, as we have recently held, this exception for "statutory" error does not include the failure to comply with a statute; such an error *is* a violation of article 36.14, which requires a charge "setting forth the law applicable to the case," and the article 36.19 standard does apply. *See Huizar v. State,* 12 S.W.3d 479, 483–85 (Tex.Cr.App.2000). Because statute in this case was not enacted in contravention of the Texas Constitution's due course of law and separation of powers provisions, *see Oakley v. State,* 830 S.W.2d 107 (Tex.Cr.App. 1992), and it is not inapplicable in every trial, it is not one of the type of "statutory" errors

the constitutional union of the States, we cannot leave to the States the formulation of the authoritative laws, rules, and remedies designed to protect people from infractions by the States of federally guaranteed rights. We have no hesitation in saying that the right of these petitioners not to be punished for exercising their Fifth and Fourteenth Amendment right to be silent—expressly created by the Federal Constitution itself—is a federal right which, in the absence of appropriate congressional action, it is our responsibility to protect by fashioning the necessary rule.[13]

But in order to invoke the protection of this federal rule in a state court, the appellant must have complied with the state court's procedural rule for preserving and presenting error. " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' "[14] If the right is forfeitable, as most rights are, an appellant who did not comply with the rules for preserving and presenting error must rely on the forum's rules for consideration of unpreserved error.

Some jurisdictions refuse to consider unpreserved error.[15] Most jurisdictions consider unpreserved error under rules for "plain error."[16] The standards for plain error are different from those for preserved error. The standards for harm may be higher, and the burden of showing harm different.[17] Even when the higher standards are met, the appellate court may have discretion whether to consider the error at all, extending review only to very serious errors.[18]

The traditional term in Texas' criminal law that corresponds to "plain error" is "fundamental error."[19] Article 36.19 establishes the standard for fundamental error in the court's charge: "the judgment shall not be reversed...unless it appears from the record that the defendant has not had a fair and impartial trial."[20] We have paraphrased this statutory standard in other terms at different times.[21] This was the standard that the court of appeals applied in this case, and it was correct to do so.

If the appellant had objected to the court's charge, and if it were erroneous, an appellate court would have been required to apply the appropriate standard. The choice of standard would have depended

that we defined in *Rose*, the first parole-charge case.

**13.** *Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**14.** *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944)).

**15.** *See* Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, 5 Criminal Procedure § 27.5(d) (2d ed.1999) (citing decisions from Iowa and Kansas).

**16.** *See ibid.*

**17.** *See Olano*, 507 U.S. at 734–35, 113 S.Ct. 1770.

**18.** *See id.* at 732, 735–37, 113 S.Ct. 1770 (explaining that federal courts review only plain errors that result in a miscarriage of justice or that seriously affect the fairness,

integrity, or public reputation of judicial proceedings).

**19.** As the comment to Texas Rule of Criminal Evidence 103(d) said, "In subsection (d), the federal rule refers to plain error. This has been changed to fundamental error, which conforms to Texas practice." *See generally* George E. Dix & Robert O. Dawson, 43 Texas Practice—Criminal Practice and Procedure § 42.05 (1995).

**20.** *Almanza*, 686 S.W.2d at 172.

**21.** "While we have discerned the basic test for fundamental error, the 'fair and impartial trial' phraseology still serves as only a general admonition that fundamental error must involve 'egregious harm' in trial. The same idea is contained in the occasional statements that a fundamental error must 'go to the very basis of the case,' deprive the accused of a 'valuable right,' or 'vitally affect his defensive theory.' " *Ibid.* (citations omitted).

on whether the error violated a right under the federal constitution, among other things.[22] But since the appellant did not preserve those issues for appellate review, the appropriate standard is the statutory one for fundamental error in the charge.

Our holding that the court of appeals did use the correct standard makes moot the issue presented in the State's petition, which is dismissed.[23]

The judgment of the court of appeals is affirmed.

Presiding Judge McCORMICK and KELLER, J., filed concurring opinions.

MEYERS and JOHNSON, JJ., dissent.

McCORMICK, P.J., delivered a concurring opinion.

I concur. As I understand it, the Court's opinion assumes without deciding that there was constitutional "error" in the court's charge and then decides what harm standard to apply to this unobjected-to constitutional error. The Court's opinion

22. *See supra*, note 12.

23. The concurrance says our decision is taken "to make our lives easier," *post* at 241, and that our decision fails to "resolve conflicts among various intermediate appellate courts," *ibid.*, which means that "similarly situated defendants may be treated differently depending on which judicial district their case is in," *post* at 241.

The foremost question in this case, and the only one that is well presented, is the standard of harm for constitutional error in the charge that was not objected to. Our addressing, on this record, the question of whether the charge was erroneous would be contrary to several principles that guide appellate courts. Issues that are not necessary to the resolution of the case should not be addressed; issues that are not properly presented because of procedural failures in the trial court should not be addressed; and constitutional issues should not be addressed if the case can be resolved on nonconstitutional grounds. Following those principles does not make our lives easier, since it would be easier to write on two issues at once, but it is the better procedure.

The issue of unresolved conflicts among the courts of appeals is far from pressing. No defendant in any district has been awarded a

claims its decision "makes moot the issue presented in the State's" cross-petition for discretionary review which is whether there really was constitutional "error in the court's charge." The State essentially claims the issue of harm need not be addressed because there was no error.

The Court's opinion does not make moot the issue presented in the State's cross-petition for discretionary review. The Court's opinion merely postpones deciding this issue. The Court should first address the issue of constitutional error and decide there is no constitutional error. And, assuming but not deciding that there is constitutional error, the Court's opinion also errs on the question of the applicable harm standard.

The trial court submitted the statutorily mandated parole charge without any objection from appellant. This charge generally instructs a jury on parole matters [1] but also instructs the jury not to consider "the manner in which the parole law may be applied to this particular defendant." [2]

new trial because of the jury charge that is before us. The case now before us is from the only court of appeals that has held the charge to be a constitutional error, doing so without any recorded consideration of the decisions to the contrary in the other courts, *see Edwards v. State*, 10 S.W.3d 699 (Tex.App.—Houston [14th Dist.] 1999, pet. filed); *Luquis v. State*, 997 S.W.2d 442 (Tex.App.—Beaumont 1999, pet. filed); *Boston v. State*, 965 S.W.2d 546 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Martinez v. State*, 969 S.W.2d 497 (Tex. App.—Austin 1998, no pet.); *Garcia v. State*, 911 S.W.2d 866 (Tex.App.—El Paso 1995, no pet.).

1. Our Legislature, as have other state legislatures, has, therefore, decided to provide a jury only with "some general understanding of parole eligibility." See *Farris v. State*, 535 S.W.2d 608, 617 (Tenn.1976) (Harbison, J., dissenting).

2. See Article 37.07, Section 4(a), V.A.C.C.P., (instructing jury "not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant" and also instructing jury "not to consider the manner in which the parole law may be applied to this particular defendant").

This parole charge, among other things, instructs the jury that a defendant could earn good conduct time off the period of his incarceration. This portion of the parole charge, however, is misleading with respect to defendants such as appellant because they are ineligible to earn good conduct time off the period of their incarceration. See V.T.C.A.,Texas Government Code, Section 508.149.

Appellant claimed for the first time on appeal that this misleading portion of the parole charge deprived him of his liberty in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the due course of law provisions of Article 1, Sections 13 and 19, of the Texas Constitution. The claimed constitutional violation apparently is based on speculation that the misleading portion of the parole charge might have caused the jury to increase appellant's sentence because of the jury's mistaken belief that appellant might earn good conduct time off the period of his incarceration even though the parole charge instructed the jury not to do this and even though there is no evidence that the jury did this anyway.[3]

The Court of Appeals decided that as applied to appellant's case the misleading portion of the parole charge violated due process and due course of law constitutional guarantees. *Jimenez v. State*, 992 S.W.2d 633, 638 (Tex.App.—Houston [1 st

Dist.] 1999).[4] The Court of Appeals also decided that this was an "error" in the jury charge. *Id.* Having thus characterized the error as "jury charge error," the Court of Appeals also decided that the unconstitutional-as-applied portion of the parole charge did not "egregiously harm" appellant under the analytical framework for assessing harm from "jury charge error" set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1984) (op. on reh'g). *Jimenez*, 992 S.W.2d at 638–39.

Appellant filed a discretionary review petition in which he contends that instead of applying *Almanza's* harm analysis, the Court of Appeals should have applied the harm analysis for constitutional error set out in Tex.R.App.Proc. 44.2(a). The State filed a cross-petition for discretionary review in which it contends the Court of Appeals erred to decide the statutorily mandated parole charge as applied to appellant's case violated due process and due course of law constitutional guarantees. We granted both discretionary review petitions.

The Court's opinion ducks the question of error and addresses the question of harm. But, questions of harm generally do not arise unless an appellate court first finds error. There is, of course, nothing wrong with appellate courts sometimes assuming error and addressing harm especially when the latter is easier to decide than the former.[5]

---

**3.** So the substantive constitutional issue *is*, does the due process of law clause prohibit a state from enacting a statute that might cause a jury to do this which the federal government would enforce against the state at the point of a gun? This Court has held that an accurate parole charge does not violate separation of powers or due process and due course of law constitutional guarantees. See *Muhammad v. State*, 830 S.W.2d 953, 955–56 (Tex.Cr.App.1992); *Oakley v. State*, 830 S.W.2d 107, 109–112 (Tex.Cr.App.1992). These cases do not dispose of the constitutional issues presented here since a portion of the parole charge provides the jury with inaccurate information with respect to defendants such as appellant.

**4.** The Court of Appeals characterized its decision as an "as-applied" constitutional violation. It might, however, be argued that appellant's claim is a "facial" attack on a portion of the statutorily mandated parole charge with respect to all defendants who are ineligible to earn good conduct time off the period of their incarceration.

**5.** See *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 869, 122 L.Ed.2d 203 (1993) (example of "assuming without deciding" opinion) and at 875 (Scalia, J., concurring) ("there is no legal error in deciding a case by assuming, *arguendo*, that an asserted constitutional right exists"); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984) (if it is easier to dispose of

But, we did not grant discretionary review in this case to make our lives easier.[6] One of the reasons we granted discretionary review in this case is to resolve conflicts among various intermediate appellate courts on whether in cases like this the misleading portion of the parole charge is constitutional error and, if so, which harm standard applies.[7] By ducking the question of error, the Court's opinion does not resolve these conflicts.

Because the Court's opinion assumes but does not resolve the question of error, those intermediate appellate courts deciding that the misleading portion of the parole charge is not error may continue to do so. This means that similarly situated defendants may be treated differently depending on which judicial district their case is in. A defendant whose case is in a judicial district that holds there is no error will lose without a consideration of harm. An identically situated defendant whose case is in a judicial district that holds there is error could win with a favorable consideration of harm.

And, should this Court ultimately decide that application of the parole statute in cases like this is not error, then that would render moot the Court's decision in this case. And, should this Court ultimately decide that application of the parole statute in cases like this is error, then this Court will have to deal with a host of habeas corpus applications from defendants in those judicial districts that had held otherwise.

So the first question the Court should address in this case is, what is "due process of law"? Particularly does the parole charge statutorily mandated by Article 37.07, Section 4(a), violate "due process of law" by generally instructing a jury that a defendant "may earn time off the period of incarceration" through the award of good conduct time when the particular defendant in the case is statutorily ineligible to earn this good conduct "time off the period of incarceration"? From what I can tell some feel that application of the parole statute in cases like this is "unfair" and, therefore, violates "due process of law." We are going to have to do better than that.

The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Article 1, Section 19, of the Texas Constitution, provides that no "citizen of this State shall be deprived of life, liberty, [or] property" except by the "due course of the law of the land."

The Fifth Amendment's "due process of law" clause and the rest of the federal Bill of Rights originally were intended as a limitation only on federal action. The Fourteenth Amendment's "due process of law" clause is a federal guarantee meant "to check the injustices of the states" primarily on race issues through congressional action.[8] But, over time the federal

ineffective assistance of counsel claim on ground of lack of sufficient prejudice instead of on ground of deficient attorney performance, then "that course should be followed").

6. See *Herrera*, 113 S.Ct. at 875 (Scalia, J., concurring) (purpose of "assuming without deciding" opinion usually is to make "life easier for ourselves").

7. See *Edwards v. State*, 10 S.W.3d 699, 702–05 (Tex.App.—Houston [14 th Dist.] 1999, pet. filed) (parole charge not constitutional error); *Martinez v. State*, 969 S.W.2d 497, 500–02

(Tex.App.—Austin 1998, no pet.) (parole charge not constitutional error, and, assuming it is, constitutional harm analysis applies); *Garcia v. State*, 911 S.W.2d 866, 868–69 (Tex.App.—El Paso 1995, no pet.) (parole charge not constitutional error because it is not misleading); *Green v. State*, 839 S.W.2d 935, 946 (Tex.App.—Waco 1992, pet. ref'd) (assuming parole charge is constitutional error, *Almanza's* harm analysis applies).

8. See U.S. Const., Amend. XIV, Section 5, (empowering only Congress "to enforce, by appropriate legislation, the provisions of this article").

courts have used the Fourteenth Amendment's "due process of law" clause to check perceived state injustices in many other areas and to make most of the federal Bill of Rights applicable to the states.[9] The term "due process of law" in the Fifth and Fourteenth Amendments to the federal constitution and the term "due course of law" in our state constitution mean the same thing.[10]

Courts must keep several important things in mind when they interpret the "due process of law" clause. The vast majority of issues confronting our society were meant to be resolved through the legislative process; the constitution does not provide a remedy for every perceived injustice or unfairness in our society.[11]

The generality of the "due process of law" clause makes judicial interpretation difficult and it tempts the judiciary to interpret the clause according to the judiciary's own sense of fairness or justice.[12] The "due process of law" clause, however, is not a judicial license to usurp the legislative power simply because some legislative enactment offends a court's own "private notions of policy." [13]

9. For authorities to support these well-settled assertions that they probably require no citation to authority, see generally *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 1497–1502, 12 L.Ed.2d 653 (1964) (Harlan, J., dissenting); *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 1763, 6 L.Ed.2d 989 (1961) (Douglas, J., dissenting) (Fourteenth Amendment's "due process of law" clause includes federal Bill of Rights and also is not "restricted and confined to them") and at 1774–78 (Harlan, J., dissenting) (discussing two views of "due process of law" that had not been accepted as delineating its scope); *Adamson v. California*, 332 U.S. 46, 67 S.Ct. 1672, 1679–83, 91 L.Ed. 1903 (1947) (Frankfurter, J., concurring) (generally discussing "due process of law" and arguing that Fourteenth Amendment's "due process of law" clause never intended to make federal Bill of Rights applicable to the states) and at 1684–1711 (Black, J., dissenting) (generally discussing "due process of law" and arguing that Fourteenth Amendment's "due process of law" clause intended to make federal Bill of Rights applicable to the states); Richard G. Stevens, *Frankfurter and Due Process* (1987), e.g., at xxi–xxvi (Fourteenth Amendment's due process of law clause says to a state that whatever criminal justice system and laws it establishes, it must provide to each and a state may not deprive a person of life, liberty or property without giving him that process which is due to him according to that law) and at 27 (congressional intent of Fourteenth Amendment centered on equal protection for blacks).

10. See, e.g., *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 252–53 (1887); *Malloy*, 84 S.Ct. at 1503 (Harlan, J., dissenting) ("due process of law" is secured against invasion by the federal government by the Fifth Amendment, and is safeguarded against state action in identical words by the Fourteenth Amendment); Interpretive Commentary to Article 1, Section 19, Tex. Const.; Stevens, *Frankfurter and Due Process*, e.g., at 83 (everyone agrees that the words "due process of law" in the Fourteenth Amendment mean precisely what is meant by those identical words in the Fifth Amendment).

11. See *Herrera*, 113 S.Ct. at 875 (Scalia, J., concurring)("unhappy truth" is "that not every problem was meant to be solved by the United States Constitution, nor can be") citing Monaghan, *Our Perfect Constitution*, 56 N.Y.U.L.Rev. 353 (1981); Stevens, *Frankfurter and Due Process*, e.g., at xxii (primary security of rights is the business not of the courts, but of a legislature in a soundly constructed republic) and at xxiv:

"The Bill of Rights is *not* a compendious list of the minimum restraints acceptable in the case of free government. The minimum restraints are listed in the Constitution itself, and they are indeed spare! Other than those few things in the original Constitution, a sound republican legislature could pretty well be trusted to protect individual rights through the normal legislative process subject to majority rule." (Emphasis in Original).

12. See *Poe*, 81 S.Ct. at 1775 (Harlan, J., dissenting) ("due process of law" clause is not self-explanatory and its history "sheds little light on the meaning of the provision") and at 1778 ("vague contours" of "due process of law" do not permit courts to interpret it according to "personal and private notions and disregard the limits that bind judges in their judicial function").

13. See Stevens, *Frankfurter and Due Process*, e.g., at xxiv, 96–98; *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 1083, 25 L.Ed.2d 368 (1970) (Black, J., dissenting) (argument that courts further the basic thrust of the Bill of

When the judiciary decides that a thing violates due process, it removes that thing from the legislative process for the people to decide through their right of self-government which "is just as important as any of the specific freedoms preserved in the Bill of Rights." [14]  Deciding due process issues based on "private notions of policy" violates the peoples' right to self-government and also may actually threaten our liberty and freedom. [15]

Because the judiciary usually has the last say, the only real check or balance on the judiciary's power to interpret and apply the vague contours of the "due process of law" clause is the judiciary's own sense of self-restraint.  And, judicial restraint in interpreting the "due process of law" clause is necessary in part because of the extreme difficulty the people have in "correcting" a "bad decision."

"According to Bryce, then, Congressional statutes *must* be tested by the Constitution, judges are charged with doing the testing and ultimately the judges of the Supreme Court have the say.  That testing and that say involve the *activity* of judgment, the art of interpretation.  The Constitution which is to be interpreted is brief and general and leaves the judges enormous latitude.  The subject matter over which this interpretation holds sway is not narrowly legal but broadly—indeed, well nigh exhaustively—political.  What is more, those judges have virtually the last say on earth on these great political matters for the legislative power, in the full sense in which Locke meant the term, that is, the amending process [to the constitution], is exasperatingly difficult to convene and control.  Notwithstanding Frankfurterian doctrines of judicial self-restraint, we believe Bryce's view to be an accurate view of the American Constitution and the 'role of the judiciary' thereunder." (Emphasis in Original). [16]

Courts should, therefore, interpret the "due process of law" clause with "restraint," "impartiality," and "humility" and with due regard for the peoples' right of self-government. [17]  Courts abuse their power of judicial review to find a due process violation simply because they believe a particular legislative enactment is "unfair."

So, what is "due process of law?"  The popular judicial conception has been that it is "the very essence of a scheme of or-

---

Rights of protecting individual freedom when they strike down a legislative act because it offends "fundamental fairness" ignores the effect of such decisions on perhaps the most fundamental individual liberty of our people—the right of each person to participate in the self-government of their society); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 423, 97 L.Ed. 469 (1953) (Jackson, J., concurring in result) (criticizing federal courts for using "the generality of the Fourteenth Amendment to subject state courts to increasing federal control" and for overturning state convictions based on "*ad hoc* determination[s] of due process of law issues by personal notions of justice instead of by known rules of law"); *Farris*, 535 S.W.2d at 617 (Harbison, J., dissenting) (whether or not the legislature's decision was or was not a wise one, or consonant with optimum criminal procedure, is a wholly different question from the constitutionality of the statute).

**14.**  See *Winship*, 90 S.Ct. at 1083 (Black, J., dissenting).

**15.**  See, e.g., *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1643–44, 16 L.Ed.2d 694 (1966) (Harlan, J., dissenting) and at 1657–65 (White, J., dissenting); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 1796, 12 L.Ed.2d 908 (1964) (Black, J., dissenting); *Malloy*, 84 S.Ct. at 1497–1502 (Harlan, J., dissenting); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 1701–08, 6 L.Ed.2d 1081 (1961) (Harlan, J., dissenting); Paul G. Cassell and Richard Fowles, *Handcuffing the Cops? A Thirty–Year Perspective On Miranda's Harmful Effects on Law Enforcement*, 50 Stan.L.Rev. 1055 (1998) (many innocent people have been killed and maimed because of *Miranda* ).

**16.**  See Stevens, *Frankfurter and Due Process*, at 113.

**17.**  See Stevens, *Frankfurter and Due Process*, e.g., at 96–98.

dered liberty," or that it is what is "implicit in the concept of ordered liberty," or that it is something without which "a fair and enlightened system of justice would be impossible," or that it is "essential fairness." [18] These vague and unprincipled formulations of "due process of law," however, are an invitation for courts to resolve due process issues based on their own "private notions of policy" primarily because "what 'is implicit in the concept of ordered liberty' depends on who is doing the conceiving." [19]

A more restrained and principled formulation of "due process of law" is required. For example, some of our earlier cases define "due process of law" as a person receiving whatever the constitution and state law—the "law of the land"—provide. See *Steddum v. Kirby Lumber Co.*, 110 Tex. 513, 221 S.W. 920, 921–22 (1920), and authorities cited; accord *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 2279, 101 L.Ed.2d 80 (1988) ("right" to peremptory challenges is violated "only if the defendant does not receive that which state law provides").

The historical record and in particular the events leading up to the adoption of the Fourteenth Amendment also support this view.

"The history of the South, however, had shown that, eaten up as it was by the cancer of slavery, which Lincoln reminded us was just as destructive of the masters as of the slaves, individuals in the oppressed class, or individuals not supportive of that oppression, were likely to be singled out for injustice *contrary* to the law which was otherwise, all right. It might be supposed that the equal protection clause particularly for-

bids discrimination by the law against a whole *class* of people—e.g., all who are black—whether that be a discrimination in the civil or the criminal law. The due process clause, on the other hand, says to the state, if you are forbidden to pass invidiously discriminatory legislation, you may be fully trusted to establish your own criminal justice system for yourselves *provided,* that whatever system you establish *for* yourselves you must be sure to *give* to each. You may not have a law which satisfies you and then get around it by taking life, liberty, or property—that is, executing, imprisoning, or fining—some black man without giving him that process which is due to him according to that law." (Emphasis in Original).[20]

The Interpretive Commentary to our "due course of law" provision in Article 1, Section 19, similarly states:

"This provision has been construed by the courts as affording several types of protection. It has been said that 'when the great barons of England wrung from King John, at the point of the sword, the concession that neither their lives nor their property should be disposed of by the crown, except as provided by the law of the land, they meant by [this] the ancient and customary laws of the English people, or laws enacted by the Parliament...., *It was not in their minds, therefore, to protect themselves against enactment of laws by the Parliament of England.'* (Citation Omitted).

"Therefore, originally the due process clause was construed as applying to the method of making a judicial or adminis-

---

18. See, e.g., *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 151–52, 82 L.Ed. 288 (1937); Stevens, *Frankfurter and Due Process,* e.g., at 88, 164, 192.

19. See Stevens, *Frankfurter and Due Process,* e.g., at 88 (these "are all very fine phrases" but the problem is "that what is 'implicit in the concept of ordered liberty' depends on who is doing the conceiving").

20. See Stevens, *Frankfurter and Due Process* at xxii, and e.g., at xxv (a people may not adopt procedures which they are willing to have applied to themselves and then vindictively except an individual—for racial or other reasons—from those procedures and "railroad" him and execute or incarcerate or fine him).

trative decision. It applied directly to the machinery or procedure by which people were tried for crime, by which property rights were adjudicated, by which the powers of eminent domain and taxation were exercised. *In short, legal proceedings were and are required to be conducted by the rules and forms established for the protection of private rights.* Otherwise, life, liberty or property would be taken without due process of law so as to be violative of the fundamental principles." (Citation Omitted) (Emphasis Supplied).

Similarly, it also has been stated that a particular legislative enactment does not violate "due process of law" if the legislature had the power to enact it, the enactment does not violate some other explicit constitutional provision, and the accused got what he had a right to expect under that legislative enactment. For example, "Perhaps Matthews understood Curtis in the following way: If one wants to know what is 'due process' he looks first to the Constitution. The Constitution contains no list of processes which the due process clause allows or forbids, but that Constitution does forbid the government to do certain things and, surely, if the government behaves toward an accused in defiance of an explicit prohibition of the Constitution, the accused cannot be said to have been treated with due process of law. But the Constitutional limitations by no means exhaust the possibilities. If some process is nowhere mentioned in the Constitution and has always been a part of Anglo–Ameri-

can tradition then the accused got what he had a right to expect—that is, he got due process of law. But it would not be due process for the government to go against an accused in defiance of a specific statutory or constitutional provision simply because the process employed, while now prohibited, was once a part of the Anglo–American tradition. But if a process is not explicitly forbidden by statute or constitution and is wholly unheard of by the Anglo–American tradition or is sometimes and somewhere not, then it is due process of law as long as it is established in an orderly (i.e., lawful) way and is not in and of itself impermissible." [21]

With these considerations in mind, we cannot conclude that the misleading portion of the statutory parole charge deprived appellant of his liberty without due process of law. The Legislature had the power to enact the statute.[22] The statute does not violate any explicit provision of either the state or federal constitutions. Appellant received that process which was due him according to the statute; that is, appellant received what state law gave him a right to expect.[23] The statute applies to all other defendants similarly situated to appellant, and there is no evidence of legislative vindictiveness with respect to these defendants.[24] Though we may personally believe that application of the misleading portion of the parole charge to appellant's case is "unfair," we would in the final analysis have to abandon our judicial duty and apply our own personal policy prefer-

**21.** Stevens, *Frankfurter and Due Process* at 86; see also *id.* (it violates due process for the government to break a statutory promise and for a statute to break a constitutional promise) and at 111 (if statute does not violate explicit constitutional provision and legislature had authority to enact it, then courts must enforce it) and at 113–14 (before a duly enacted law can be judicially nullified, it must be forbidden by some explicit restriction upon political authority in the Constitution).

**22.** See *Oakley,* 830 S.W.2d at 111–12; *Edwards,* 10 S.W.3d at 704–05.

**23.** See Stevens, *Frankfurter and Due Process* at xxii.

**24.** See Stevens, *Frankfurter and Due Process* at xxii (due process requires that whatever system of criminal justice a state establishes, it must give to each) and at xxv (people may not adopt procedures which they are willing to have applied to themselves and then vindictively except an individual from those procedures and "railroad" him and execute or incarcerate or fine him).

ences to decide that it violates "due process of law." [25]

It probably is necessary to measure the constitutionality of the parole charge against the United States Supreme Court's interpretation of "due process of law" in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). *Simmons* was an extension of the Supreme Court's "death-is-different" mitigating evidence jurisprudence for capital cases. See *Simmons*, 114 S.Ct. at 2194–95 and at 2200–2201 (O'Connor, J., concurring in the judgment).

*Simmons* characterized the prosecution as urging the jury to sentence the defendant to death because, if sentenced to life, he would be a threat to society when he was later paroled from prison. See *Simmons*, 114 S.Ct. at 2202 (Scalia, J., dissenting). The defendant was not given the opportunity to inform the jury that a life sentence carried no possibility of parole. See *Simmons*, 114 S.Ct. at 2191. The Supreme Court decided this violated "fundamental notions of due process" because the defendant may have been sentenced to death "on the basis of [inaccurate and misleading] information which he had no opportunity to deny or explain." See *Simmons*, 114 S.Ct. at 2194–2196.

*Simmons* could be read for the broad proposition that it violates due process to deprive a defendant of the opportunity to rebut untruthful information about the availability of parole [26] when a state requires jury consideration of that fact and when the prosecution urges the jury to use this untruthful information in assessing sentence. See *Simmons*, 114 S.Ct. at 2196, and at 2200–01 (O'Connor, J., concur-

ring). To the extent *Simmons* can be read this way, it does not apply here because the prosecution did not urge the jury to use untruthful information about the availability of parole in assessing appellant's sentence and also because the parole charge instructed the jury not to consider the application of the parole law to this particular case.

*Simmons* also does not support the above-mentioned proposition. *Simmons* carved out for capital cases an exception to the general rule that determinations "as to what a jury should and should not be told about sentencing" are "purely matters of state law." See *Simmons*, 114 S.Ct. at 2196. The general rule rather than the exception carved out in *Simmons* applies here.

Finally, assuming that application of the parole statute to appellant's case violates due process, I disagree with the Court's decision that *Almanza's* "egregious harm" standard applies to this unobjected-to constitutional error. This Court and the Court of Appeals characterized this unobjected-to constitutional error as jury charge error thus requiring application of the egregious harm standard set out in Article 36.19, V.A.C.C.P., as interpreted by this Court in *Almanza*.[27]

This harm standard, however, applies only to a trial court's unobjected-to errors of commission or omission in submitting a jury charge "setting forth the law applicable to the case." [28] The trial court's charge in this case set forth the law applicable to the case. The parole charge is "law applicable to the case" by virtue of Article 37.07, Section 4(a). A trial court

---

**25.** See Stevens, *Frankfurter and Due Process*, e.g., at 97 (one's own opinion as to the wisdom of a law must be wholly excluded when one is doing one's judicial duty).

**26.** Since appellant did not object to the parole charge, it cannot be said that he was denied an opportunity to rebut the misleading portion of the charge.

**27.** The harm standards set out in *Almanza* do not apply unless the appellate court first finds error in the jury charge. See *Almanza*, 686 S.W.2d at 174 (finding error in the court's charge to the jury begins—not ends—the inquiry). Here, the Court has not first found error in the jury charge.

**28.** See Article 36.14, V.A.C.C.P.; *Posey v. State*, 966 S.W.2d 57, 60–64 (Tex.Cr.App. 1998).

would violate its statutory duty to instruct the jury on the "law applicable to the case" by not submitting the parole charge because this is what Article 37.07, Section 4(a), requires.

The claim is not that there is error in the jury charge. The claim is that application of Article 37.07, Section 4(a), to appellant's case violates due process of law. The claim does not involve an attack on the jury charge but involves an attack on the constitutionality of the statute. *Almanza*, therefore, does not apply and appellant procedurally defaulted the claim by not raising it in the trial court.

I respectfully concur in the result only.

KELLER, J., delivered a concurring opinion.

By failing to object, appellant has forfeited any right to have his claim analyzed under the standard of harm for constitutional errors, found in Texas Rule of Appellate Procedure 44.2(a). In addition, there is no due process violation in this case because appellant failed to request relief. *Whatley v. State,* 946 S.W.2d 73, 75–76 (Tex.Crim.App.1997).