In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00066-CR


______________________________




JOHNNY LOUIS STOKES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 28083-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Johnny Stokes pled not guilty to a charge of aggravated robbery. A jury convicted
him and assessed punishment at seventy-five years' imprisonment and a fine of
$10,000.00. Stokes contends an omission from the jury charge, to which he did not object,
was so egregious that it requires reversal. 

 On August 31, 2000, Stokes was released on parole for a 1987 kidnapping
conviction. Within seventy days of his release, he committed the aggravated robbery in
this case. In the commission of this offense, Stokes pulled Zama Dee Little from her 2000
Ford Explorer, causing her to fall and fracture her pelvis. Stokes then fled in the Explorer
and was arrested later that night while driving the stolen vehicle. 

 At the punishment phase of the trial, the court presented the State and Stokes with
the proposed jury charge. Neither side objected to the charge. Stokes appeals the
punishment, contending he suffered egregious harm because the court's charge failed to
instruct the jury in compliance with the Texas Code of Criminal Procedure. See Tex. Code
Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2002).

 Stokes contends he should have a new trial on punishment because of an omission
in the jury charge. He claims, and the State concedes, the trial court failed to charge the
jury correctly by failing to include the mandatory language of Article 37.07, § 4(a). That
section provides that, where the jury has found the defendant guilty of aggravated robbery,
the court shall charge the jury in the penalty phase of trial as follows:

 Under the law applicable in this case, the defendant, if sentenced to
a term of imprisonment, may earn time off the period of incarceration
imposed through the award of good conduct time. Prison authorities may
award good conduct time to a prisoner who exhibits good behavior, diligence
in carrying out prison work assignments, and attempts at rehabilitation. If a
prisoner engages in misconduct, prison authorities may also take away all or
part of any good conduct time earned by the prisoner.


 It is also possible that the length of time for which the defendant will
be imprisoned might be reduced by the award of parole.


 Under the law applicable in this case, if the defendant is sentenced to
a term of imprisonment, he will not become eligible for parole until the actual
time served equals one-half of the sentence imposed or 30 years, whichever
is less, without consideration of any good conduct time he may earn. If the
defendant is sentenced to a term of less than four years, he must serve at
least two years before he is eligible for parole. Eligibility for parole does not
guarantee that parole will be granted.


 It cannot accurately be predicted how the parole law and good
conduct time might be applied to this defendant if he is sentenced to a term
of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.


 You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.


Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).

 When the appellant fails to preserve for appeal an alleged error in the jury charge,
the "appropriate standard [of review] is the statutory one for fundamental error in the
charge." Jimenez v. State, 32 S.W.3d 233, 239 (Tex. Crim. App. 2000); see also Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); Hill v. State, 30 S.W.3d 505, 507 (Tex.
App.-Texarkana 2000, no pet.). Article 36.19 establishes the standard for fundamental
error in the court's charge: "the judgment shall not be reversed . . . unless it appears from
the record that the defendant has not had a fair and impartial trial." Tex. Code Crim. Proc.
Ann. art. 36.19; Jimenez, 32 S.W.3d at 238, citing Almanza v. State, 686 S.W.2d 157, 172
(Tex. Crim. App. 1984) (op. on reh'g). 

 Therefore, in our harm analysis, we look to see whether it appears from the record
that the charge resulted in such egregious harm Stokes did not have a fair and impartial
trial. See Jimenez, 32 S.W.3d at 238; Almanza, 686 S.W.2d at 171. Further, under
Almanza, it is the appellant's burden on appeal to show that such harm occurred. We determine harm in light of the entire jury charge, the state of the evidence
(including contested issues and the weight of the probative evidence), the argument of
counsel, and any other relevant information revealed by the record as a whole. Hill, 30
S.W.3d at 507, citing Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); Rudd
v. State, 921 S.W.2d 370, 373 (Tex. App.-Texarkana 1996, pet. ref'd). However, direct
evidence of harm is not necessary to establish egregious harm. Hutch v. State, 922
S.W.2d 166, 171 (Tex. Crim. App. 1996); Hill, 30 S.W.3d at 507-08. 

 We first look to the jury charge. The trial court failed to give the instructions required
by Article 37.07, § 4(a). Stokes contends the jury therefore had to assess punishment
without any information about the law concerning parole. The only reference to parole
contained in the court's instructions was: 

 YOU ARE INSTRUCTED THAT IN DETERMINING THE PUNISHMENT IN
THIS CASE, YOU ARE NOT TO DISCUSS AMONG YOURSELVES HOW
LONG THE DEFENDANT WILL BE REQUIRED TO SERVE ANY
SENTENCE YOU DECIDE TO IMPOSE. SUCH MATTERS COME WITHIN
THE EXCLUSIVE JURISDICTION OF THE BOARD OF PARDONS AND
PAROLES.

 

Under Article 37.07, § 4(a), the jury is "not to consider the manner in which the parole law
may be applied to this particular defendant." 

 It is presumed a jury follows and understands a court's charge unless there is
evidence to the contrary. Hutch v. State, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). 
The charge instructed the jury not to discuss among themselves how long Stokes might
serve. Article 37.07, § 4(a) provides that, while the jurors may consider the existence of
parole law, they are not to consider the manner in which the parole law may be applied to
this particular defendant. Applying the presumption the jury followed its instructions,
Stokes suffered no harm because the jury was directly and explicitly told not to discuss
how much time he might serve.

 Although direct evidence of harm is not required, Stokes has the burden to show
harm. See id. at 171; Hill, 30 S.W.3d at 507; Almanza, 686 S.W.2d at 171. Stokes
contends egregious harm occurred at the punishment phase of trial by the admission into
evidence of his six prior felony convictions. But we note Stokes was the first to introduce
evidence concerning his criminal past during his testimony at the guilt/innocence phase of
the trial, and further, the admission of Stokes' prior criminal record was appropriate under
Article 37.07, § 3(a)(1). See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon
Supp. 2002). Although the admission of his prior crimes may have caused him harm, that
admission was proper.

 Stokes contends the prosecutor's closing argument encouraged the jury to consider
the effect of parole in assessing its sentence and this caused him egregious harm. 
However, a review of the entire argument reveals a proper plea for law enforcement. See
McFarland v. State, 989 S.W.2d 749, 751 (Tex. Crim. App. 1999); Gaddis v. State, 753
S.W.2d 396, 398 (Tex. Crim. App. 1988). Although the prosecutor pointed out that in forty-four years of life Stokes had been sentenced to eighty-four years in prison, this argument
could have been for the purpose of pointing out that every time Stokes was given another
chance, he chose to reoffend. The prosecutor requested the jury to "punish the act,
hurting this lady in the aggravated robbery." He also reminded the jury that none of Stokes'
crimes were "victimless." He asked the jury:

 What's it worth? What's it worth for this heinous crime -- and I think it's a
heinous crime. When you pull this lady out and you leave her there for who
knows what happens to her, because you're not going to be concerned,
you're just driving along -- what's it worth for that criminal act and this
criminal actor who sits right over there?


He points out it was less than seventy days from the time Stokes was released on his
kidnapping conviction to when he committed aggravated robbery. The prosecutor
discussed Stokes' progression of convictions from theft to kidnapping to aggravated
robbery. Stokes counters by pointing to his testimony that he did not intend to harm Little. 
However, Little testified Stokes grabbed her and pulled her from the vehicle, causing her
to fall and fracture her pelvis. Also, Stokes admitted in his statement to the police he
grabbed Little and pulled her from the vehicle. 

 The jury assessed seventy-five years' confinement, which is between the requests
of the prosecution (who wanted imprisonment for life) and Stokes (who requested thirty to
forty years). In looking at the entire closing argument, we find the prosecutor properly
argued for law enforcement. 

 Finally, in examining other relevant material, Stokes contends the court's colloquy
with the jury following the formal verdict on punishment demonstrates the charge error
caused egregious harm. During jury deliberation, the jury sent the judge a note. After the
verdict, the judge asked the presiding juror, "The first note you sent out wanted to know
whether I could change or override your verdict. I'm puzzled by that. What was the
concern?" The presiding juror said the jury was concerned the trial court would feel the
verdict was either to one or the other extreme. The judge assured the jury it was not within
the court's authority to change the jury's verdict. Nothing in this exchange indicates
whether the jury improperly considered Stokes' parole eligibility in reaching its verdict. 
There is nothing to indicate the jury feared its verdict on punishment would not be long
enough to keep Stokes from achieving an early parole. 


 Stokes has failed to show this colloquy caused egregious harm. We find Stokes has
failed to meet his burden of proving egregious harm. A review of the entire record reflects
Stokes received a fair and impartial trial. See Jimenez, 32 S.W.3d at 238. 

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: January 31, 2002

Date Decided: February 7, 2002


Publish