IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. 74,772






EX PARTE THOMAS CHRISTOPHER RETZLAFF, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM BELL COUNTY







 Hervey, J., filed a dissenting opinion in which Keasler, J., joined.



DISSENTING OPINION 


 

 This dissenting opinion is substituted for the prior dissenting opinion which is withdrawn. The Court
has apparently decided that it will provide the extreme remedy of applicant's early release from prison
(even though a parole panel has determined that this would endanger the public) if the parole panel does
not meet the Court's extra-statutory and arbitrary deadline for reviewing applicant for mandatory
supervision release after "timely notice" to applicant. All of this ignores the ultimate due process question
and has the very real potential of putting the security of the public at risk. I must, therefore, respectfully
dissent to this particular exercise of the judicial power.

 Applicant has filed a habeas corpus application. The record reflects that applicant previously filed
another habeas corpus application in which he claimed that a parole panel had not provided him with
adequate notice that it would review him for mandatory supervision release. This Court disposed of this
writ on August 21, 2002, when it issued an opinion deciding that applicant was denied a meaningful
opportunity to be heard when the parole panel reviewed him for mandatory supervision release in
November 2001. The parole panel had notified applicant that it would review him in December 2001. 
Ex parte Retzlaff, slip op. at 1-2 (Tex.Cr.App. No. 74,412, delivered August 21, 2002) (unpublished)
(by reviewing applicant early, the Board denied applicant a meaningful opportunity to be heard): see also
Ex parte Shook, 59 S.W.3d 174 (Tex.Cr.App. 2001). This Court's August 21, 2002, opinion ordered
the parole panel to "consider Applicant for mandatory release and provide him with timely notice that such
consideration will occur." Id.

 Applicant filed this current habeas corpus application in June 2003. Applicant contends in this
proceeding that a parole panel considered him for mandatory supervision in January 2003 without providing
him with adequate notice that the parole panel would do so. The record in this habeas corpus proceeding
reflects that on March 7, 2002, the parole panel notified applicant in writing that it would again consider
applicant for mandatory supervision release at some unspecified future date. This written notice further
stated that if applicant wished to submit any additional information, he should do so "in writing as soon as
possible to the TDCJ-Parole Division, P.O. Box 13401, Capitol, Station, Austin, TX 78711 OR to your
Institutional Parole office." The record further reflects that on January 16, 2003, the parole panel denied
applicant mandatory supervision release because, among other things, applicant's release would endanger
the public and also because applicant committed a major disciplinary offense during the preceding six
months. Applicant waited about six months (from January 2003 to June 2003) to file this application for
habeas corpus. 

 Applicant contends that the parole panel did not provide him with adequate notice that it would
review him for mandatory supervision release in January 2003. Applicant claims that the "ambiguous,
vague" notice that applicant received on March 7, 2002, is the same as no notice at all and that the
"[January 2003] hearing was just as defective as the old one [in November 2001] because the Board
pulled the same stunt as before!!"

DUE PROCESS

 In Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, the Supreme Court
decided that Nebraska's "discretionary parole" statutory scheme (which is similar to Texas' mandatory
supervision release statutory scheme) afforded all "the process that is due" by providing the inmate with
an opportunity to be heard and informing the inmate of why he was denied "discretionary parole." See
Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 99 S.Ct. 2100, 2108
(1979). (1)
 But, this Court decides that the parole panel violated applicant's federal constitutional due
process rights because it should have provided applicant with better notice of the time it would review
applicant for mandatory supervision release. But the due process issue is not necessarily whether applicant
should have received better or perfect notice. The due process issue is whether the notice that applicant
did receive provided applicant with an opportunity to be heard before the parole panel denied him
mandatory supervision release. See Greenholtz, 99 S.Ct. at 2108.

 The majority does not expressly hold that applicant was denied this opportunity to be heard. 
Instead, the Court speculates that the (March 7, 2002) notice that the applicant in this case received could
deprive some future hypothetical applicant of an opportunity to be heard. (2) The Court further relies on
applicant's allegation of "harm" that had he been given better notice, he "would have used all of the time
right up to [January 16, 2003] to have letters of support submitted by his wife and children and friends." 
But, applicant has not shown that he had any (old or new) materials to submit. And, it is extremely doubtful
that any unsubmitted materials that applicant may have had would have helped applicant given the Board's
determination that applicant is dangerous to the public-a determination that this applicant does not dispute. (3)

 The situation presented in this proceeding is not like the situation described in our August 21, 2002,
opinion where a parole panel notified applicant that it would consider him for mandatory supervision release
in December 2001 but then considered him in November 2001. See Retzlaff, slip op. at 1-2. There, we
expressly decided that applicant was denied an opportunity to be heard when the parole panel reviewed
him early. See id. In this case, the parole panel did not review applicant early. The parole panel reviewed
applicant within the time frame that it stated that it would review applicant in the March 7, 2002, notice. 
This notice also shows that applicant had an opportunity to submit any additional information to the parole
panel in support of his claim for mandatory supervision release. This notice even stated that applicant
should submit this information "as soon as possible." On this record, applicant has not shown that he was
denied an opportunity to be heard. (4)

THE REMEDY

 The Court, contrary to the "plain" language of the applicable statutory scheme, further decides that
"[w]ithout the two statutory findings, made only after timely due process notice to the inmate giving him an
opportunity to submit materials, a parole panel must release an eligible inmate to mandatory supervision." 
This is an extreme, and potentially dangerous to the general public, remedy for any due process violation
that may have occurred here. Instead of putting the public at risk with the early release from prison of
dangerous inmates because of a parole panel's failure to comply with our orders, the Court should
incarcerate the responsible Board officials under its contempt powers until they comply with the Court's
orders. This, and not putting dangerous inmates back on the streets before they have served their
sentences, is the usual method of enforcing our orders.

 I respectfully dissent.

 

 Hervey, J.



Filed: May 19, 2004 

Publish
1. I generally agree with the Court's description of Texas' mandatory supervision release statutory
scheme. In this case, the habeas record reflects that the parole panel made the necessary findings that
makes applicant ineligible for mandatory supervision release. In addition, it would appear that Texas
inmates have less of a "liberty" interest under the current statutory scheme than they did under the prior
scheme since the prior scheme provided for "automatic" release and the current scheme does not. See
Greenholtz, 99 S.Ct. at 2106-07 (describing how Nebraska's "discretionary parole" statutory scheme
created a due process protected liberty interest in the expectation of parole).

2. For example, on page eight of its opinion, the Court states:


 With this type of notice, an inmate could be reviewed the day after the notice was sent and
therefore his materials could not be submitted in time, or he could be reviewed in ten to
twelve months, in which case his materials may be entirely out-of-date. This notice is, from
a constitutional due process standpoint, the same as no notice at all.
3. In deciding that "an inmate is entitled to notice of the specific month and year in which he will be
reviewed for release on mandatory supervision," the Court's opinion reads too much into footnote six of
Greenholtz. There, the Supreme Court noted that there was no claim that notifying an inmate of the month
in which he would be reviewed for "discretionary parole" violated due process. See Greenholtz, 99 S.Ct.
at 2107 n.6. The Supreme Court did not hold that due process required this. See id.
4. Notwithstanding this, it is worth mentioning the overall context in which cases like this come before
the Court. The State of Texas may without violating the Constitution require inmates like applicant to serve
their entire sentences day for day with no hope of parole or any other form of early release. Nevertheless,
Texas citizens through their Legislature have provided for inmates like applicant to be reviewed for early
release at least once a year. The statutory scheme even requires these inmates' release unless the Board
makes the necessary findings that would prevent this. Though the applicable statutory scheme does not
require it, a parole panel also provides these inmates with an opportunity to submit materials each time they
are reviewed for early release. In this case applicant received everything that he was entitled to receive
under state law when the parole panel denied him early release based on the findings required by the
statutory scheme. Arguably, this is all "the process that is due" applicant. See Jimenez v. State, 32
S.W.3d 233, 244-45 (Tex.Cr.App. 2000) (McCormick, P.J., concurring) (due process requires that a
defendant receive what state law provides).