COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-096-CR

 

 

CHARLES NICK CHIODO, JR.                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Charles Nick
Chiodo, Jr., appeals his convictions for indecency with a child and sexual
assault.[2]  We affirm.

 

 








BACKGROUND

Appellant, the complainant=s father, pled not guilty to charges of indecency with a child and
sexual assault.  The jury found him
guilty and assessed eight years= confinement for the indecency charge and fifteen years= confinement for the sexual assault charge.  The trial court accepted the verdict and
sentenced Appellant accordingly.  We will
discuss the facts of this case with regard to each issue.

JURY CHARGE

In three subissues under his
first issue, Appellant complains that his constitutional rights were
violated.  He made none of these
objections at trial.[3]  Standard Of Review








Appellate review of error in
a jury charge involves a two‑step process.  Abdnor v. State, 871 S.W.2d 726, 731
(Tex. Crim. App. 1994).  Initially, we
must determine whether error occurred. 
If so, we must then evaluate whether sufficient harm resulted from the
error to require reversal.  Id. at
731‑32.  If there is error in the
court=s charge, but the appellant did not object to it at trial, we must
decide whether the error was so egregious and created such harm that appellant
did not have a fair and impartial trialCin short, that Aegregious
harm@ has occurred.  Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g); see Tex. Code Crim.
Proc. Ann. art. 36.19 (Vernon 1981); Hutch v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996).  The
court of criminal appeals has held that for claims of unobjected-to
constitutional charge error, the appropriate standard is the standard provided
by Almanza and article 36.19.  See
Ex parte Smith, 185 S.W.3d 455, 467 & n.38 (Tex. Crim. App. 2006), cert.
granted, 75 U.S.L.W. 3188 (U.S. Oct. 6, 2006) (No. 05‑11304); Jimenez
v. State, 32 S.W.3d 233, 237‑38 (Tex. Crim. App. 2000).








In making the egregious harm
determination, Athe actual
degree of harm must be assayed in light of the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.@  Almanza, 686 S.W.2d at
171; see generally Hutch, 922 S.W.2d at 172‑74.  The purpose of this review is to illuminate
the actual, not just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a difficult standard to
prove and must be determined on a case‑by‑case basis.  Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002); Hutch, 922 S.W.2d at 171.

Reasonable Doubt Instructions

In his first and second
subissues, Appellant claims that his constitutional due process rights were
violated by the jury charge language, which he claims was Ainaccurate and contradictorily define[d] the term >beyond a reasonable doubt,=@ thereby lowering the State=s burden of proof, and that the jury charge inappropriately defined Abeyond a reasonable doubt.@  He complains of the following
language included in the trial court=s jury charge: 

The prosecution has the burden of proving the
defendant guilty and it must do so by proving each and every element of the
offense charged beyond a reasonable doubt and if it fails to do so, you must
acquit the defendant.  

 

It is not
required that the prosecution prove guilt beyond all possible doubt; it is
required that the prosecution=s proof excludes all Areasonable doubt@ concerning
the defendant=s guilt.

These two paragraphs are also known respectively
as Aparagraph 2@ and Aparagraph 3@ of the Geesa
instructions.  See Geesa v. State,
820 S.W.2d 154, 162 (Tex. Crim. App. 1991), overruled in part by Paulson v.
State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).








Appellant contends that the
combined result of paragraphs 2 and 3 is that A[a] reasonable juror . . . could have a reasonable doubt concerning a
particular element of the case and not have a reasonable doubt concerning the
defendant=s guilt.@  We disagree.  The combination of these paragraphs neither
defines the term Abeyond a
reasonable doubt@ nor creates
Appellant=s asserted Alogical fallacy and semantic inconsistency.@  Paragraph 2 merely sets forth
the State=s
burden.  See Tex. Code Crim. Proc. Ann. art. 38.03
(Vernon Supp. 2006) (stating that Ano person may be convicted of an offense unless each element of the
offense is proved beyond a reasonable doubt@).  It explains the State=s burden as a reiteration of the same instruction, immediately
preceding the two contested paragraphs, which states:

All persons are presumed to be innocent and no
person may be convicted of any offense unless each element of the offense is
proved beyond a reasonable doubt. 
The fact that a person has been arrested, confined, or indicted for, or
otherwise charged with, the offense, gives rise to no inference of guilt at his
trial.  The law does not require a
defendant to prove his innocence or produce any evidence at all.  The presumption of innocence alone is
sufficient to acquit the defendant.

 

[Emphasis added.] As stated in the instructions,
for the State=s proof to
support each element of the offense beyond a reasonable doubt, it would
necessarily have to exclude all reasonable doubt as to Appellant=s guilt as defined by the elements of the offense.








Paulson did not entirely overrule Geesa.  See Woods v. State, 152 S.W.3d 105,
115 (Tex. Crim. App. 2004) (stating that, in Paulson, the court
specifically criticized Geesa paragraphs 4 and 5 as attempting to define
reasonable doubt), cert. denied, 544 U.S. 1050 (2005); see also
Paulson, 28 S.W.3d at 573 (stating, AWe specifically overrule that portion of Geesa which requires
trial courts to instruct juries on the definition of >beyond a reasonable doubt.=@).  While Geesa
paragraphs 4 and 5 attempt to define Areasonable doubt,@[4] the instruction in the instant case did not contain these paragraphs
and Geesa paragraphs 2 and 3 do not set forth any definition of Areasonable doubt.@  See Geesa, 820 S.W.2d
at 162.








As Appellant acknowledges, we
have previously found the inclusion of paragraph 3 proper.  See, e.g., Frank v. State, 183 S.W.3d
63, 79 (Tex. App.CFort Worth
2005, pet. ref=d) (stating
that we have previously addressed paragraph 3=s inclusion and found it to be proper); Best v. State, 118
S.W.3d 857, 865 (Tex. App.CFort Worth 2003, no pet.) (holding paragraph 3=s inclusion not reversible error); see also Woods, 152 S.W.3d
at 115 (stating that the trial court=s inclusion of paragraph 3 was not an abuse of discretion).  We decline Appellant=s invitation to reconsider these opinions.  While the better practice is to give no
definition of reasonable doubt at all to the jury, a trial court does not abuse
its discretion when, as here, it includes paragraph 3 of the Geesa
instruction in the jury charge at guilt‑innocence.  See Woods, 152 S.W.3d at 115; Frank,
183 S.W.3d at 79.  Likewise, because
paragraph 2 has not been expressly criticized or specifically overruled, and
because, contrary to Appellant=s interpretation, it neither defined Areasonable doubt@ on its own
or in combination with paragraph 3, nor created a logical inconsistency when
combined with paragraph 3, we conclude that the trial court did not abuse its
discretion by including this instruction within the jury charge.  See Woods, 152 S.W.3d at 115.  Because the inclusion of paragraphs 2 and 3
did not constitute error, the first step in our charge‑error analysis
ends the inquiry, and we overrule Appellant=s first and second subissues under his first issue.  See Abdnor, 871 S.W.2d at 731.

Application Paragraph








In his third subissue,
Appellant complains that the jury charge was in error in the application
portion of the indecency charge because it disjunctively listed the culpable
mental states of Aknowingly@ and Aintentionally@ with the specific intent necessary to complete the crime, so that the
jury could have convicted Appellant without proper consideration of whether he
acted with the proper mens rea required by section 21.11.

The elements of indecency
with a child are that the accused (1) engaged in Asexual contact,@ (2) with a
child, (3) younger than seventeen years of age, (4) who was not the spouse of
the accused.  See Tex. Penal Code Ann. ' 21.11(a)(1).  ASexual contact@ means the
following acts, if committed with the intent to arouse or gratify the sexual
desire of any person: (1) any touching by a person, including touching through
clothing, of the anus, breast, or any part of the genitals of a child; or (2)
any touching of any part of the body of a child, including touching through
clothing, with the anus, breast, or any part of the genitals of a person.  Id. ' 21.11(c).

The indictment alleged that
Appellant Awith intent
to arouse or gratify [his] sexual desire . . . intentionally or knowingly
engage[d] in sexual contact with [A.C.], by touching the breast and genitals of
[A.C.], a child younger than 17 years of age and not the spouse of [Appellant].@  The jury charge contained the
following indecency application paragraph: 








Now if you
find from the evidence beyond a reasonable doubt that on or about the 1st day
of August, 2003 in Denton County, Texas, [Appellant] did then and there, with
the intent to arouse or gratify the sexual desire of said [Appellant],
intentionally or knowingly engage in sexual contact with [A.C.], by touching
the breast of [A.C.], a child younger than 17 years of age and not the spouse
of [Appellant], then you will find [Appellant] guilty of Indecency with a
Child, as charged in Count I of the indictment.

The jury charge also provided definitions of Aknowingly@ and Aintentionally.@    Because the application paragraph
disjunctively listed the culpable mental states of knowingly and intentionally
with the specific intent necessary to complete the crime, the jury could have
convicted Appellant without consideration of whether he acted with the proper
mens rea required by statute, constituting charge error.  See Rodriguez v. State, 24 S.W.3d 499,
502 (Tex. App.CCorpus
Christi 2000, pet. ref=d).  Therefore, we will review the record to
determine whether this error could have caused egregious harm to Appellant,
considering the entire jury charge, the state of the evidence, the argument of
counsel, and any other relevant information revealed by the record of the trial
as a whole.  See Abnor, 871 S.W.2d
at 731-32; Almanza, 686 S.W.2d at 171.








Within the context of the
entire jury charge, the disjunctive application paragraph appears less
harmful.  The charge accurately stated
the substantive law of the offense at issue,[5]
and, as discussed above, explained what the State had and did not have to
prove.  The charge addressed how to treat
any extraneous offense testimony and reminded the jury of the presumption of
innocence, that the indictment did not constitute evidence of guilt, and that
the jury was the exclusive judge of the facts proved, the credibility of the
witnesses, and the weight to be given to the testimony.

With regard to the state of
the evidence, particularly the contested issues, 

to prove indecency required proof of Appellant=s specific intent to arouse or gratify his sexual desire through
touching A.C.=s breast
when A.C. was younger than seventeen and not his spouse.  See Tex.
Penal Code Ann. ' 21.11.
However, the specific intent to arouse or gratify the sexual desire element can
be inferred from the defendant=s conduct, his remarks, and all surrounding circumstances.  See McKenzie v. State, 617 S.W.2d 211,
216 (Tex. Crim. App.  1981); Couchman
v. State, 3 S.W.3d 155, 163 (Tex. App.CFort Worth 1999, pet. ref=d).  Therefore, the only truly
contested issue with regard to this offense was witness credibility.








The jury is the exclusive
judge of the credibility of witnesses and of the weight to be given their
testimony; reconciliation of conflicts in the evidence is within the jury=s exclusive province, and it may choose to believe some testimony and
disbelieve other testimony.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Both A.C., the complainant, and
Appellant testified at trial.

A.C. testified that she went
to Texas to visit Appellant when she was around twelve years old and stayed
with him and his wife for over three years. She testified that while she lived
with Appellant, he touched her breasts,[6]
in addition to putting his mouth on her vagina, penetrating her vagina with his
penis, putting his penis in her mouth and in her anus, using vibrators and
dildos on her, and smoking marijuana with her. 
She testified that she attempted suicide at around age fifteen.








A.C.=s mother testified that a month after she brought A.C. back to
Virginia after the suicide attempt, A.C. told her about her relationship with
Appellant; her mother called the police and arranged for A.C. to be examined.
Paula Fornara, a sexual assault nurse examiner, testified about her expertise
and explained the sexual assault exam process; she testified with reference to
the records of A.C.=s
examination by the sexual assault nurse examiner in Virginia. Fornara testified
that she had reviewed the pictures taken in A.C.=s genital exam and noted trauma to A.C.=s female sexual organ that was consistent with Aa very sexually active person.@

Appellant denied everything,
calling A.C.=s
allegations Aabsurd@ and Arevolting.@  Appellant=s mother, A.C.=s
grandmother, testified that A.C. was untruthful.  His wife gave similar testimony about A.C.=s untruthfulness and testified that A.C. was rarely alone with
Appellant, that she never saw Appellant and A.C. smoke marijuana, although she
did occasionally smell marijuana on A.C, and that she never went to bed without
Appellant.  Appellant=s wife amended her last answer the next day, stating that right before
A.C. left, she and Appellant slept in separate bedrooms for several weeks
because of Aturmoil@ caused by A.C., and that, during that time, A.C. would crawl into bed
with Appellant while he was asleep.  Appellant
gave similar testimony.  From A.C.=s testimony, the jury could have found that Appellant had the
requisite specific intent to arouse or gratify his sexual desire.








In closing arguments, the
State argued that the jury could determine Appellant=s specific intent with regard to the indecency charge by considering
A.C.=s testimony that Athe sex kept escalating@ and that A.C. was not lying and had no reason to lie.  Appellant=s counsel argued that A.C. was lying and that Appellant and his wife
were telling the truth, stating, AHe=s a dad who=s being framed by a little girl who=s not known to tell the truth.@  On rebuttal, the State
countered that Appellant and his wife were lying.  The essence of both arguments was witness
credibility.

AEgregious@ harm is present when the case for conviction was actually made
clearly and significantly more persuasive by the error.  See Saunders v. State, 817 S.W.2d 688,
692 (Tex. Crim. App. 1991).  We conclude
that the complained-of instruction did not cause egregious harm here because
the case itself hinged on witness credibility, the jury had the proper
instruction on the substantive law before it, and there was ample evidence upon
which the jury, if it chose to believe A.C., could have found that Appellant
had the requisite specific intent, to arouse or gratify his sexual desire,
necessary to convict him of indecency with a child.  Therefore, though the instruction was error,
it did not cause the egregious harm that would require reversal.  See Abdnor, 871 S.W.2d at 731-32; Almanza,
686 S.W.2d at 171; see also Rodriguez, 24 S.W.3d at 503 (reaching the
same result on similar facts).  We
overrule Appellant=s final
subissue under his first issue.

TESTIMONY

In his second issue,
Appellant complains that the trial court erred by allowing Fornara to testify
with regard to A.C.=s
truthfulness and Appellant=s guilt, in violation of Appellant=s federal and state constitutional rights.

 








Preservation Of Error

To preserve a complaint for
our review, a party must have presented to the trial court a timely request, objection,
or motion that states the specific grounds for the desired ruling if they are
not apparent from the context of the request, objection, or motion.  Tex.
R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex.
Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  AExcept for complaints involving systemic (or absolute) requirements,
or rights that are waivable only, . . . all other complaints, whether
constitutional, statutory, or otherwise, are forfeited by failure to comply
with Rule 33.1(a).@  Mendez, 138 S.W.3d at 342.  The complaint made on appeal must comport
with the complaint made in the trial court or the error is forfeited.  Heidelberg v. State, 144 S.W.3d 535,
537 (Tex. Crim. App. 2004); Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim.
App. 1996), cert. denied, 522 U.S. 827 (1997); Rezac v. State,
782 S.W.2d 869, 870 (Tex. Crim. App. 1990). 
At trial, the only objection made by Appellant=s trial counsel with regard to Fornara=s testimony now at issue was, AObjection, leading.@








Fornara was permitted to
remain for A.C.=s trial
testimony before Fornara testified. 
Appellant=s counsel
asked Fornara if she had heard all of A.C.=s testimony and had Aan opinion as to what you think of [A.C.]?@  Fornara replied, AI don=t make
opinions about people based on their history.@  Appellant=s counsel persisted, asking, AYou don=t have an
opinion based on the testimony?@ and ADo you have
an opinion of her?@  Fornara answered, AI have an opinion of what happened to her.@

Appellant=s counsel passed the witness, and the State followed up with, ABased on [A.C.=s]
testimony, what is your opinion of what happened to her?@ Fornara replied, AI believe that she=s been multiple times sexually assaulted.@ The State continued, ABy her father, [Appellant]?@  Appellant=s counsel stated, AObjection, leading.@  The trial court overruled the
objection.  The State rephrased its
question as, ABy whom,
based on the history?@  Fornara replied, AHer father.@  Appellant=s complaint on appeal does not comport with his counsel=s trial objection, nor did Appellant=s counsel object at all to the State=s follow-up question.  See
Heidelberg, 144 S.W.3d at 537. 
Therefore, Appellant=s second issue is forfeited.  We
overrule Appellant=s second
issue.

 

 

 








CONCLUSION

Having overruled both of
Appellant=s issues, we
affirm the judgment of the trial court.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
A:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  July 5, 2007











[1]See Tex.
R. App. P. 47.4.





[2]Tex. Penal
Code Ann. ' 21.11(a)(1) (Vernon 2003 &
Supp. 2006) (indecency with a child); id. ' 22.011(a)(2)(C) (sexual assault).





[3]Appellant did object to the
extraneous offense instruction and to the statutory time frame with regard to
the date alleged in the indictment. 
Appellant=s defense counsel objected that the
extraneous offense instruction was a run-on sentence and confusing.  She objected that the ten-year leeway for the
Aon or about@ commission date of the offense was
Afar too much.@ 
The State pointed out that the extraneous offense charge was Astraight out of McClung=s@ and article 38.37 of the code of
criminal procedure and that the limitations period for these charges was ten
years.  See Tex. Code Crim. Proc. Ann. art.
12.01(2)(E), (5) (Vernon Supp. 2006). 
The trial court overruled both of Appellant=s jury charge objections.





[4]Geesa paragraph 4 states, AA >reasonable doubt= is a doubt based on reason and
common sense after a careful and impartial consideration of all the evidence in
the case.  It is the kind of doubt that
would make a reasonable person hesitate to act in the most important of his own
affairs.@ 
Geesa, 820 S.W.2d at 162.  Geesa
paragraph 5 states, AProof beyond a reasonable doubt,
therefore, must be proof of such a convincing character that you would be willing
to rely and act upon it without hesitation in the most important of your own
affairs.@ 
Id.





[5]The charge stated the substantive
law as,

 

Our law provides that a person commits Indecency with a Child if, with
a child younger than 17 years old and not his spouse, whether the child is the
same or opposite sex, he engages in sexual contact with the child.  By the term >sexual conduct,= as used herein, it is meant any
touching of any part of the breast of another person with intent to arouse or
gratify the sexual desire of any person.





[6]A.C. testified that he touched her
breasts more than once.  She testified
that the second time it happened and she asked him what he was doing, he
answered, AI was just trying to see if you
were like your mother, but I=m glad you=re not.@