NUMBER 13-09-00413-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

JUAN MANUEL FLORES,    
                                                 Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                            Appellee.

                                        
                                                                               

 

On appeal from the 138th
District Court 

of Cameron County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Vela  

Memorandum Opinion by
Justice Rodriguez

 

                                                                                                                                    

Appellant Juan Manuel Flores was found
guilty of driving while intoxicated (DWI), enhanced by two or more prior DWI
convictions.  See Tex. Penal Code
Ann. § 49.04 (Vernon 2003), § 49.09 (Vernon Supp. 2010).  The jury
sentenced Flores to six years’ incarceration in the Texas Department of
Criminal Justice and assessed a fine of $8,000.  By two issues, Flores challenges
the legal sufficiency of the evidence to support his guilt and complains of
charge error.  We affirm.

I.  Background[1]

            On August 17, 2008, at approximately 8:00 p.m.,
Flores was involved in an accident with another vehicle.  Flores was the driver
of one vehicle, and Mariano Martinez was the driver of the second vehicle. 
Martinez testified that when Flores got out of his car, he was bleeding from a
cut on his head and "was acting as if he was [sic] drunk … because [of the
way] he smelled and the way he talked" and "[t]he way he was acting
[aggressive] and telling [Martinez] not to call the police and all that." 
Flores also asked if everybody was "okay."  Both drivers claimed that
the other was at fault.  According to Martinez and Flores, they talked about
insurance coverage, settling the problem, and calling the police.  Martinez
explained that Flores left the scene of the accident.

A few minutes later, Deputy Luis Enrique
Vallejo, then a patrol officer for the Cameron County Sheriff's Department,
stopped Flores.  Jose Mendoza, a trooper with the Texas Department of Public
Safety (DPS), arrived at the stop and observed Flores.  Carlos Javier
Rodriguez, another DPS State Trooper, assisted with the arrest, administered
field sobriety tests and a portable breath test, and transported Flores to the
jail, then to the hospital for medical clearance, and, finally, back to the
jail.  While the state troopers and the deputy agreed that Flores had
lacerations on his face from the accident and that a head injury—"a
serious bump on the head"—could cause actions such as those exhibited by
Flores following the accident, none opined that Flores had such a head injury,
and Flores, himself, said that he was "fine."  The testimony of the
state troopers, on cross examination, also revealed that neither knew whether
Flores was unable to drive before the accident.

Each officer testified that he believed
Flores was intoxicated.  Each based his opinion on one or more of the
following:  (1) the smell of alcohol on Flores's breath; (2) the smell of
alcohol emanating from his vehicle; (3) Flores's non-compliance, his red,
bloodshot eyes, his slurred, loud speech, and his unsteady gait and balance;
(4) the results of his field sobriety tests[2];
and (5) the results of the portable breath test.[3] 
Trooper Rodriguez offered his opinion that Flores was intoxicated and agreed
that Flores did not possess normal physical and mental faculties.  See Tex. Penal Code Ann. § 49.01(1)(A)
(Vernon 2003) (defining "intoxicated," in part, as "not having
the normal use of mental or physical faculties by reason of the introduction of
alcohol."[4]

When Trooper Rodriguez and Flores
arrived at the Cameron County Jail, the medic advised Trooper Rodriguez that,
because of the lacerations, the bleeding, and the dried blood, the jail
personnel would not accept Flores until he received a medical clearance. 
According to Trooper Rodriguez, this decision had nothing to do with a head
injury.  Before being taken to the hospital, Trooper Rodriguez read Flores his
DWI statutory warnings which informed him that he was under arrest for a DWI
offense and advised him of the possible consequences of refusing to give the
breath specimen requested.[5] 
Flores refused to provide a requested breath sample.  Trooper Rodriguez also
explained that a blood sample was not taken at the hospital because the
accident did not involve a fatality, and therefore it was not mandatory. 
Flores's injuries were evaluated at the hospital, and Flores was released to
the custody of the Cameron County Jail.

Flores's hospital records were admitted
into evidence as the State's first exhibit.  The records revealed the
following:  (1) Flores registered at 11:30 p.m. on August 17, 2008; (2) the
admitting diagnosis/reason for visit was MVC—in for medical clearance; (3) the
chief complaint was MVC or MVA[6];
(4) a diagnosis of "open wound of cheek" was given; (5) there were
injuries to Flores's face, neck, and left hand; (6) recent use of ETOH was
noted[7];
(7) Flores's five-centimeter facial laceration was cleaned and treated with an
adhesive; (8) there were no associated symptoms, such as loss of consciousness,
being dazed, or having seizures, and "no acute distress"; (9) he was
"alert" and oriented "x 3," not confused and disordered;
(10) his mood, affect, and sensory and motor skills were described as normal;
(11) all systems were negative except for skin lacerations; (12) Flores had
several facial abrasions but no hematoma; (13) his pupils were equal, round,
and reactive to light and accommodation; (14) his speech was clear and
appropriate for his age; and (15) he moved all extremities and ambulated
independently.

The following assessment appeared in
physicians' orders and other medical records:  "PT REAR ENDED ANOTHER CAR
AT 2120 AND HAS WOUND TO FACE FR BROKEN WIND SHIELD, NO SEATBELT/AIRBAG. 
DENIES LOC/N/V," and "PT AAOX3 CONVERSANT AMBULATORY, VERBALLY
ABUSIVE TO TROOPER WOUND TO RT SIDE OF FACE, ALCOHOL BREATH HAND CUFF AT THE BACK." 
"TODAY SEVERAL BEERS" was written under the heading "Last
Alcoholic Beverage and How Much."

When discharged, Flores received
instructions for a laceration.  Flores's written release from the hospital's
emergency department stated the following:  "Juan Manuel Flores has
received [a] medical screening examination by [an] emergency physician and at
this time no serious or life/limb threatening condition has been diagnosed. 
The patient was released in stable condition."

Flores, Susan Lorie Scaff, who lived
with Flores as his wife, and Flores's son, John Emanuel Flores (Manny),
testified for the defense.  Flores and Scaff described their trip to Progresso,
Mexico on August 17, 2008.  They explained that while there, Flores had several
beers, maybe four, between 2:00 p.m. and 5:00 p.m.; he had no more that day. 
They returned home, and Flores left to check on his work place around 7:00
p.m.  According to Flores, he left work and was on his way to his brother's
house, which is next to his mother's house, when the accident occurred.  He saw
a vehicle, partially on the shoulder and partially on the main road.  Flores
explained that when he started to pass the vehicle, its driver started weaving,
and Flores could not avoid him.

Flores testified that he remembers getting
out of his car after the accident, being mad, as was the other driver, yelling
at others to see if they were all right, talking with the other driver about
certain things including insurance, and going back to his car to get his
glasses.  Flores stated that he does not, however, remember driving away from
the scene of the accident, talking with the officers, or taking any sobriety
tests.  He remembers having a cut on his face, bleeding and vomiting, and
telling an officer that he did not need an ambulance.  He explained at trial
that his refusal of the ambulance was because he would be charged for the
transport.  Flores said that he did tell the officer that he needed medical
attention—some stitches—for his cut.  Flores testified that he does not remember
going to jail, but does remember going to the hospital.

Flores stated that he was not drunk that
night.  He claims that he was injured when his head hit the windshield as he "set
[his] brakes" to avoid hitting the other vehicle; he had a bump on his
head, and the windshield was cracked.  Flores suggested that the injury to his
cheek was caused by hitting the steering wheel.  He also testified that he was
using his seat belt and yet hit the windshield.  When confronted with the
officer's testimony that he smelled like alcohol, Flores agreed that maybe he
did and explained that he was throwing up what he ate and drank, which included
alcohol, suggesting that he smelled like alcohol because his shirt was covered
with blood and whatever he had to eat or drink in Mexico.  He did not know if
the medical personnel at the hospital found any prolonged head injuries. 
Flores stated that Trooper Rodriguez did the talking for him at the hospital.

Scaff also testified that since Flores
hit his head in the accident, he has been confused, not himself; he cannot
remember things and cannot do his job.  Scaff explained that Flores will not go
to the doctor because he is afraid.  Manny testified that he saw his father
around 6:00 p.m. on August 17, 2008, for about thirty minutes and that he did
not appear to be intoxicated.  According to his son, Flores was neither
stumbling nor talking differently and had no cuts on his face.

II. 
Discussion

A. 
Sufficiency of the Evidence

By his first issue, Flores contends that
the evidence is not legally sufficient to establish his guilt.  See Tex. Penal Code Ann. § 49.04 (setting
out the elements of the offense of driving while intoxicated as (1) operating a
motor vehicle, (2) in a public place, (3) while intoxicated).  Seeking an
acquittal, Flores's arguments, which are based on the principal of equipoise,
are made only as to the legal sufficiency of the evidence and whether a
rational juror could have found him guilty beyond a reasonable doubt based on
the state of the evidence.[8] 
See Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Flores argues that the
evidence is not legally sufficient because it is in equipoise; it is equally
balanced between guilt and innocence.  He asserts that that the evidence is equally
balanced to support the possibility of guilt—that he was, in fact, intoxicated—and
the possibility of innocence—that he was hurt, not intoxicated, and the injury
he sustained in the accident caused his behavior.  Because of the
"balanced" evidence, Flores argues that a rational juror could
neither ignore nor disregard the evidence that shows the equal probability of
innocence and, thus, could not have found him guilty beyond a reasonable
doubt.  See id.

            Under
the Jackson standard, “the relevant question is whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 319 (1979); see
Brooks, 2010 WL 3894613, at *5 (characterizing the Jackson standard
as:  “Considering all of the evidence in the light most favorable to the
verdict, was a jury rationally justified in finding guilt beyond a reasonable
doubt.”).  “[T]he fact[-]finder’s role as weigher of the evidence is preserved
through a legal conclusion that upon judicial review all of the evidence is
to be considered in the light most favorable to the prosecution.”  Jackson,
443 U.S. at 319 (emphasis in original); see also Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (“The
jury, in all cases, is the exclusive judge of facts proved and the weight to be
given to the testimony . . . .”); Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000) (“The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given testimony, and it is also the exclusive
province of the jury to reconcile conflicts in the evidence.”).

We begin the resolution of this issue by
addressing Flores's underlying premise, namely that the evidence is in
equipoise.  We agree that a conclusion of guilt—that Flores was intoxicated—is
supported by the evidence.  However, we do not agree that fairly balanced
evidence, or evidence in fair equipoise, supports a conclusion of
innocence—that Flores was hurt, not intoxicated.

Claiming that the State's evidence is
balanced to support his innocence as well as his guilt, Flores relies on the
officers' testimony—testimony elicited during cross-examination—that head
injuries can cause symptoms or acts similar to those caused by intoxication.[9] 
For example, Trooper Rodriguez agreed that there was evidence that Flores
suffered a blow to his head and that a head injury could cause someone to get
disoriented, to sway, to be unsteady, to need to be supported, to stagger, to
be heavy footed, to slur his speech, to be thick tongued, and to have red eyes
and droopy eyelids.  However, Trooper Rodriguez also agreed that all of these
observations were explained logically in this case only if it were assumed that
Flores had a head injury.  Although Trooper Rodriguez acknowledged that Flores
hit his head, he did not testify that Flores had suffered an injurious blow to
his head or that he had a head injury that caused his actions that evening. 
Rather, in his opinion, Flores was intoxicated.

In addition, Deputy Vallejo testified,
on cross examination, that he "vaguely remember[ed] that … [Flores] had
some kind of injuries" and agreed that Flores was bleeding.  When asked,
"And as we theorize in this case, if a man was bleeding and had been hurt,
that could cause him to swerve a little bit, right?", Deputy Vallejo
answered, "Also [correct]."  Officer Vallejo agreed that there could
be other explanations for Flores's behavior; however, he believed that
"between his driving erratically, between his red bloodshot eyes …, from
him not responding or complying to anything, what's your name, sir, basic
questions,… and [a] smell an odor of alcoholic beverage emitting from the
vehicle," Flores was intoxicated.

On cross-examination, Trooper Mendoza
also agreed that Flores had blood on his face from minor scratches.  He saw
blood on Flores's forehead, cheek, and mouth.  Trooper Mendoza agreed that a
serious bump on the head would cause unsteady balance, slurred speech, and loss
of memory "in a major accident, perhaps."  Trooper Mendoza testified
that after the accident something was wrong with Flores, but that he was
intoxicated, not hurt.  Trooper testified as follows:  "I believe [Flores]
drank more than two or three beers because of the way he was, the slurred
speech, it was real bad.  It was hard to understand when he was trying to yell
whatever he was saying.  And then his eyes were real bloodshot and he was—his
balance was unstable, he kept trying to use stuff to get balanced."

Furthermore, while Flores asserts on
appeal, in support of his equipoise argument, that the Cameron County jail
system refused to accept him as an inmate because he was bleeding and severely
injured, the record reveals that Trooper Rodriguez testified that the jail
would not accept Flores without medical clearance because of the lacerations on
his head, the bleeding, and the dried blood.  Nothing in his testimony suggests
that the refusal was based on a severe head injury.  And although Flores
suggests that the medical report shows "that there were severe head
injuries," our review of the medical records reveals that they refer to
lacerations, not head injuries, and certainly not severe head injuries.  While
Flores was taken to the hospital, no serious or life-threatening condition was
diagnosed, his facial laceration was cleaned and treated with an adhesive, and
he was released in stable condition to the custody of the jail.

We cannot conclude that the above evidence
of a head injury, if any, is equally balanced with the above evidence of
intoxication.  Thus, the evidence of innocence and the evidence of guilt are
not in equipoise.  Because this underlying premise is not supported by the
record, we do not reach Flores's argument that our review should be one of
legal sufficiency and that we should determine whether a rational juror could
have ignored or disregarded the evidence of innocence and found Flores guilty
of DWI beyond a reasonable doubt.  Accordingly, we overrule Flores's first
issue.

B. 
The Charge

In his second issue, Flores contends
that the trial court erred when it included the following jury charge
instruction:  "You are instructed that you may consider the defendant's
refusal to submit to a breath test as evidence of intoxication."  The
charge also defined "intoxicated" as "not having the normal use
of mental or physical faculties by reason of the introduction of alcohol into
the body, or having an alcohol concentration of 0.08 or more."  Flores
contends that the instruction, when read with the definition of
"intoxicated," deprived him of his constitutional right to the
presumption of innocence and to trial by jury because it allowed the jury to
presume intoxication, and thus guilt, from the mere act of his refusal to
provide the breath specimen.  He argues this is fundamental error.  See
Saldano v. State, 70 S.W.3d 873, 887-89 (Tex. Crim. App. 2002) (en banc)
(enumerating the following "fundamental errors":  absence of
jurisdiction over the person of the defendant; absence of subject-matter
jurisdiction; prosecution under an ex post facto law; denial of the right to
counsel; denial of the right to a jury trial; denial of 10 days' preparation
before trial for appointed counsel; holding trials at a location other than the
county seat; comments by a trial judge that taint the presumption of innocence;
and jury charge errors resulting in egregious harm); Ladd v. State, 3
S.W.3d 547, 560 (Tex. Crim. App. 1999) ("Under the Due Process Clause of
the Fourteenth Amendment, all persons are presumed innocent, and no person may
be convicted unless each element of the offense is proved by the prosecution
beyond a reasonable doubt.").  Flores did not object to the inclusion of
this instruction in the charge.

1. 
Applicable Law

The function of the jury charge is to
inform the jury of the applicable law and to guide the jury in its application
of the law to the case that the jury must decide.  Hutch v. State, 922
S.W.2d 166, 170 (Tex. Crim. App. 1996) (en banc).  In analyzing a jury charge
issue, a court first decides whether an error exists.  Ngo v. State, 175
S.W.3d 738, 743-44 (Tex. Crim. App. 2005) (en banc).  If there is an error, we
analyze that error for harm.  Id.  The degree of harm necessary for
reversal depends on whether a defendant preserved the error by objection.  Id.
at 743.

When there is no objection to the charge
and it is claimed that the incorrect charge violates a constitutional
provision, "the applicable standard is that provided by article 36.19 of
the [c]ode of [c]riminal [p]rocedure:  'the judgment shall not be reversed …
unless it appears from the record that the defendant has not had a fair and
impartial trial.'"  Jimenez v. State, 32 S.W.3d 233, 233 (Tex.
Crim. App. 2000) (en banc) (quoting Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 2006)); Hutch, 922
S.W.2d at 170; see Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1985) (op. on rehr'g) (en banc) (explaining that where there is no
objection to a jury charge, reversal is required only when error is so
egregious and created such harm that the appellant "has not had a fair and
impartial trial").

2. 
Presumption of Innocence

Flores contends in this second issue is that
the complained-of instruction allows for a presumption of guilt based on his
refusal to take a breath test.  The refusal to take a breath test, however, is
not an element of the offense of DWI that must be proven beyond a reasonable
doubt.  "Intoxication" is the element that must be proven.  While the
charge instructed the jury that it must find that Flores was intoxicated, the
charge only instructed the jury that it may consider Flores's refusal to
submit to a breath test as evidence of intoxication.  The charge contained no
instruction, for example, that a breath test refusal was conclusive evidence of
intoxication, that such a refusal was per se intoxication, or that, because
Flores refused the breath test, the jury must find that he was intoxicated.  We
cannot conclude that the jury's permissive consideration of Flores's refusal to
take a breath test was determinative of intoxication or that the instruction
allowed the jury to presume intoxication and thus guilt from Flores's act of
refusal.  See Tex. Transp. Code
Ann. § 724.061 (Vernon 1999) ("A person's refusal of a request by
an officer to submit to the taking of a specimen of breath or blood . . . may
be introduced into evidence at the person's trial.").

In addition, the sixth paragraph of the
charge shows that the jury was properly instructed that "[a]ll persons are
presumed to be innocent"; that, in order to convict any person of a crime,
each element of the offense must be proved beyond a reasonable doubt; and that
a defendant need not prove his innocence or produce any evidence at all.  The
instruction also stated that "[t]he presumption of innocence alone is
sufficient to acquit the defendant."  In other words, the charge reminded
the jury that Flores was presumed to be innocent unless each element, including
the intoxication element, of the offense was proven beyond a reasonable doubt.

Considering the charge as a whole, we
conclude that the trial court did not deprive Flores of his constitutional
right to the presumption of innocence by including the
refusal-to-provide-a-breath-sample instruction in the jury charge.  Thus, we
cannot conclude that there was fundamental error as argued by Flores.

3. 
Comment on the Weight of the Evidence

We note, however, that the court of
criminal appeals has held "that a jury instruction informing the jury that
it may consider evidence of a refusal to take a breath … test constitutes an
impermissible comment on the weight of the evidence."  Bartlett v. State,
270 S.W.3d 147, 154 (Tex. Crim. App. 2008); see Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007)
(providing that the charge must not express any opinion as to the weight to be
accorded to the evidence); Tex. Transp.
Code Ann. § 724.061.  To the extent Flores asserts this argument, we
conclude that error exists because the instruction was a comment on the weight
of the evidence.  We find, however, having reviewed the entire charge, the
state of the evidence, the arguments of counsel, and other relevant information,
that such error was not so egregious and created such harm that Flores did not
have a fair and impartial trial.  See Hutch, 922 S.W.2d at 171; Almanza,
686 S.W.2d at 171.

Flores's second issue is overruled.

III.  Conclusion

 

            We
affirm.

 

                                                                                         NELDA
V. RODRIGUEZ

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 2nd

day of December,
2010.

                                                                                                                                                            









[1]
Because this is a memorandum opinion and the parties are familiar with the
facts, we will not recite them here except as necessary to advise the parties
of the Court's decision and the basic reasons for it.  See Tex. R. App. P. 47.4.





[2]
Trooper Rodriguez attempted to administer three Standardized Field Sobriety
Tests.  On the Horizontal Gaze Nystagmus, Trooper Rodriguez observed that
Flores had "a lack of smooth pursuit on his eyes ….  [H]e did not follow
the stimulus properly as well.  And … he had the distance of sustained
nystagmus at a maximum deviation, and also prior to 45 degrees …."  Flores
was unable to complete the walk-and-turn test because he almost fell.  When
Flores began the third field sobriety test, the one-leg stand, he attempted to
raise his right foot but had a difficult time standing on his left foot and
used his arms to balance.  Trooper Rodriquez stopped the second and third tests
because he did not want Flores to injure himself.





[3]
Trooper Rodriguez testified that the results of the portable breath test
indicated Flores had alcohol in his system. 





[4]
The penal code also defines "intoxication" as "having an alcohol
concentration of 0.08 or more."  Tex.
Penal Code Ann. § 49.01(1)(B) (Vernon 2003).  Although the indictment
and the jury charge included this definition, neither party addresses whether a
finding under the section 49.01(1)(B) definition supports Flores's conviction. 
Because we find no evidence in the record of Flores's alcohol concentration
level, a rational jury must have had reasonable doubt that this definition
supported a finding of "intoxication."  See Jackson v. Virginia,
443 U.S. 307, 319 (1979).  We therefore conclude that the evidence is legally
insufficient to establish "intoxication" under this definition of
intoxication.





[5]
The possible consequences of refusing to provide a breath specimen included the
following:  (1) evidence of the refusal will be admissible against the person
in court, and (2) the person's driver's license will be suspended for not less
than 180 days.  Tex. Transp. Code Ann.
§ 724.015(1)-(2) (Vernon Supp. 2010).  Flores was likewise informed of the
possible consequences if he submitted to the test and the results of the test
showed a prohibited blood-alcohol level.  See id. § 724.015(3)-(4).

 





[6]
MVC is an abbreviation for motor vehicle collision or crash; MVA, an
abbreviation for motor vehicle accident.  mediLexicon,
MVC & MVA, at http://www.medilexicon.com/medicalabbreviatrions.php (last
visited Dec. 1, 2010).

 





[7]
ETOH, when used in a medical context, is an abbreviation for ethanol or ethyl
alcohol.  mediLexicon, ETOH, at
http://www.medilexicon.com/medicalabbreviatrions.php (last visited Dec. 1,
2010).



 





[8]
Although the issue of equipoise has traditionally been reviewed in Texas under
a factual sufficiency review, see, e.g., Steadman v. State, 280
S.W.3d 242, 246-47 (Tex. Crim. App. 2009) ("An appellate court may not
find the evidence to be factually insufficient merely because there are
'reasonably equal competing theories of causation.'"); Goodman v. State,
66 S.W.3d 283, 286 n.4 (Tex. Crim. App. 2001) (reasoning that "when the
evidence is in 'fair equipoise' (meaning that a rational juror could either
find for or against a proposition), any one of the [three rational] conclusions
[found by the jury] should be upheld by a reviewing court" and, thus,
concluding that the evidence is factually sufficient), Flores argues, and the
court of criminal appeals now agrees, that our only review should be one of
legal sufficiency.  The Brooks Court recently held that there is “no
meaningful distinction between the Jackson v. Virginia legal sufficiency
standard and the Clewis factual-sufficiency standard” and that the Jackson
standard “is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Brooks v. State, No. PD-0210-09, 2010 WL 3894613, at *8, *14
(Tex. Crim. App. Oct. 6, 2010) (plurality opinion).  Accordingly, we review
Flores’s claim of evidentiary sufficiency under “a rigorous and proper
application” of the Jackson standard of review.  Id. at *11.





[9]
Flores's asserts that it is the State's evidence that is in equipoise and that
the balance of that evidence is enough to support his argument.  Accordingly,
we look only to the State's evidence for our analysis.