

# NUMBER 13-09-00413-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JUAN MANUEL FLORES,            Appellant,

v.

THE STATE OF TEXAS,            Appellee.

## On appeal from the 138th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Vela
### Memorandum Opinion by Justice Rodriguez

Appellant Juan Manuel Flores was found guilty of driving while intoxicated (DWI), enhanced by two or more prior DWI convictions. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003), § 49.09 (Vernon Supp. 2010). The jury sentenced Flores to six years' incarceration in the Texas Department of Criminal Justice and assessed a fine of $8,000.

By two issues, Flores challenges the legal sufficiency of the evidence to support his guilt and complains of charge error. We affirm.

## I. BACKGROUND[1]

On August 17, 2008, at approximately 8:00 p.m., Flores was involved in an accident with another vehicle. Flores was the driver of one vehicle, and Mariano Martinez was the driver of the second vehicle. Martinez testified that when Flores got out of his car, he was bleeding from a cut on his head and "was acting as if he was [sic] drunk … because [of the way] he smelled and the way he talked" and "[t]he way he was acting [aggressive] and telling [Martinez] not to call the police and all that." Flores also asked if everybody was "okay." Both drivers claimed that the other was at fault. According to Martinez and Flores, they talked about insurance coverage, settling the problem, and calling the police. Martinez explained that Flores left the scene of the accident.

A few minutes later, Deputy Luis Enrique Vallejo, then a patrol officer for the Cameron County Sheriff's Department, stopped Flores. Jose Mendoza, a trooper with the Texas Department of Public Safety (DPS), arrived at the stop and observed Flores. Carlos Javier Rodriguez, another DPS State Trooper, assisted with the arrest, administered field sobriety tests and a portable breath test, and transported Flores to the jail, then to the hospital for medical clearance, and, finally, back to the jail. While the state troopers and the deputy agreed that Flores had lacerations on his face from the accident and that a head injury—"a serious bump on the head"—could cause actions

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

such as those exhibited by Flores following the accident, none opined that Flores had such a head injury, and Flores, himself, said that he was "fine." The testimony of the state troopers, on cross examination, also revealed that neither knew whether Flores was unable to drive before the accident.

Each officer testified that he believed Flores was intoxicated. Each based his opinion on one or more of the following: (1) the smell of alcohol on Flores's breath; (2) the smell of alcohol emanating from his vehicle; (3) Flores's non-compliance, his red, bloodshot eyes, his slurred, loud speech, and his unsteady gait and balance; (4) the results of his field sobriety tests[2]; and (5) the results of the portable breath test.[3] Trooper Rodriguez offered his opinion that Flores was intoxicated and agreed that Flores did not possess normal physical and mental faculties. *See* TEX. PENAL CODE ANN. § 49.01(1)(A) (Vernon 2003) (defining "intoxicated," in part, as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol."[4]

---

[2] Trooper Rodriguez attempted to administer three Standardized Field Sobriety Tests. On the Horizontal Gaze Nystagmus, Trooper Rodriguez observed that Flores had "a lack of smooth pursuit on his eyes …. [H]e did not follow the stimulus properly as well. And … he had the distance of sustained nystagmus at a maximum deviation, and also prior to 45 degrees …." Flores was unable to complete the walk-and-turn test because he almost fell. When Flores began the third field sobriety test, the one-leg stand, he attempted to raise his right foot but had a difficult time standing on his left foot and used his arms to balance. Trooper Rodriquez stopped the second and third tests because he did not want Flores to injure himself.

[3] Trooper Rodriguez testified that the results of the portable breath test indicated Flores had alcohol in his system.

[4] The penal code also defines "intoxication" as "having an alcohol concentration of 0.08 or more." TEX. PENAL CODE ANN. § 49.01(1)(B) (Vernon 2003). Although the indictment and the jury charge included this definition, neither party addresses whether a finding under the section 49.01(1)(B) definition supports Flores's conviction. Because we find no evidence in the record of Flores's alcohol concentration level, a rational jury must have had reasonable doubt that this definition supported a finding of "intoxication." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We therefore conclude that the evidence is legally insufficient to establish "intoxication" under this definition of intoxication.

3

When Trooper Rodriguez and Flores arrived at the Cameron County Jail, the medic advised Trooper Rodriguez that, because of the lacerations, the bleeding, and the dried blood, the jail personnel would not accept Flores until he received a medical clearance. According to Trooper Rodriguez, this decision had nothing to do with a head injury. Before being taken to the hospital, Trooper Rodriguez read Flores his DWI statutory warnings which informed him that he was under arrest for a DWI offense and advised him of the possible consequences of refusing to give the breath specimen requested.[5] Flores refused to provide a requested breath sample. Trooper Rodriguez also explained that a blood sample was not taken at the hospital because the accident did not involve a fatality, and therefore it was not mandatory. Flores's injuries were evaluated at the hospital, and Flores was released to the custody of the Cameron County Jail.

Flores's hospital records were admitted into evidence as the State's first exhibit. The records revealed the following: (1) Flores registered at 11:30 p.m. on August 17, 2008; (2) the admitting diagnosis/reason for visit was MVC—in for medical clearance; (3) the chief complaint was MVC or MVA[6]; (4) a diagnosis of "open wound of cheek" was given; (5) there were injuries to Flores's face, neck, and left hand; (6) recent use of ETOH

---

[5] The possible consequences of refusing to provide a breath specimen included the following: (1) evidence of the refusal will be admissible against the person in court, and (2) the person's driver's license will be suspended for not less than 180 days. TEX. TRANSP. CODE ANN. § 724.015(1)-(2) (Vernon Supp. 2010). Flores was likewise informed of the possible consequences if he submitted to the test and the results of the test showed a prohibited blood-alcohol level. *See id.* § 724.015(3)-(4).

[6] MVC is an abbreviation for motor vehicle collision or crash; MVA, an abbreviation for motor vehicle accident. MEDILEXICON, MVC & MVA, at http://www.medilexicon.com/medicalabbreviatrions.php (last visited Dec. 1, 2010).

4

was noted[7]; (7) Flores's five-centimeter facial laceration was cleaned and treated with an adhesive; (8) there were no associated symptoms, such as loss of consciousness, being dazed, or having seizures, and "no acute distress"; (9) he was "alert" and oriented "x 3," not confused and disordered; (10) his mood, affect, and sensory and motor skills were described as normal; (11) all systems were negative except for skin lacerations; (12) Flores had several facial abrasions but no hematoma; (13) his pupils were equal, round, and reactive to light and accommodation; (14) his speech was clear and appropriate for his age; and (15) he moved all extremities and ambulated independently.

The following assessment appeared in physicians' orders and other medical records:  "PT REAR ENDED ANOTHER CAR AT 2120 AND HAS WOUND TO FACE FR BROKEN WIND SHIELD, NO SEATBELT/AIRBAG.  DENIES LOC/N/V," and "PT AAOX3 CONVERSANT AMBULATORY, VERBALLY ABUSIVE TO TROOPER WOUND TO RT SIDE OF FACE, ALCOHOL BREATH HAND CUFF AT THE BACK."  "TODAY SEVERAL BEERS" was written under the heading "Last Alcoholic Beverage and How Much."

When discharged, Flores received instructions for a laceration.  Flores's written release from the hospital's emergency department stated the following:  "Juan Manuel Flores has received [a] medical screening examination by [an] emergency physician and at this time no serious or life/limb threatening condition has been diagnosed.  The patient was released in stable condition."

---

[7] ETOH, when used in a medical context, is an abbreviation for ethanol or ethyl alcohol. MEDILEXICON, ETOH, at http://www.medilexicon.com/medicalabbreviatrions.php (last visited Dec. 1, 2010).

Flores, Susan Lorie Scaff, who lived with Flores as his wife, and Flores's son, John Emanuel Flores (Manny), testified for the defense. Flores and Scaff described their trip to Progresso, Mexico on August 17, 2008. They explained that while there, Flores had several beers, maybe four, between 2:00 p.m. and 5:00 p.m.; he had no more that day. They returned home, and Flores left to check on his work place around 7:00 p.m. According to Flores, he left work and was on his way to his brother's house, which is next to his mother's house, when the accident occurred. He saw a vehicle, partially on the shoulder and partially on the main road. Flores explained that when he started to pass the vehicle, its driver started weaving, and Flores could not avoid him.

Flores testified that he remembers getting out of his car after the accident, being mad, as was the other driver, yelling at others to see if they were all right, talking with the other driver about certain things including insurance, and going back to his car to get his glasses. Flores stated that he does not, however, remember driving away from the scene of the accident, talking with the officers, or taking any sobriety tests. He remembers having a cut on his face, bleeding and vomiting, and telling an officer that he did not need an ambulance. He explained at trial that his refusal of the ambulance was because he would be charged for the transport. Flores said that he did tell the officer that he needed medical attention—some stitches—for his cut. Flores testified that he does not remember going to jail, but does remember going to the hospital.

Flores stated that he was not drunk that night. He claims that he was injured when his head hit the windshield as he "set [his] brakes" to avoid hitting the other vehicle; he had a bump on his head, and the windshield was cracked. Flores suggested that the

6

injury to his cheek was caused by hitting the steering wheel. He also testified that he was using his seat belt and yet hit the windshield. When confronted with the officer's testimony that he smelled like alcohol, Flores agreed that maybe he did and explained that he was throwing up what he ate and drank, which included alcohol, suggesting that he smelled like alcohol because his shirt was covered with blood and whatever he had to eat or drink in Mexico. He did not know if the medical personnel at the hospital found any prolonged head injuries. Flores stated that Trooper Rodriguez did the talking for him at the hospital.

Scaff also testified that since Flores hit his head in the accident, he has been confused, not himself; he cannot remember things and cannot do his job. Scaff explained that Flores will not go to the doctor because he is afraid. Manny testified that he saw his father around 6:00 p.m. on August 17, 2008, for about thirty minutes and that he did not appear to be intoxicated. According to his son, Flores was neither stumbling nor talking differently and had no cuts on his face.

## II. DISCUSSION

### A. Sufficiency of the Evidence

By his first issue, Flores contends that the evidence is not legally sufficient to establish his guilt. *See* TEX. PENAL CODE ANN. § 49.04 (setting out the elements of the offense of driving while intoxicated as (1) operating a motor vehicle, (2) in a public place, (3) while intoxicated). Seeking an acquittal, Flores's arguments, which are based on the principal of equipoise, are made only as to the legal sufficiency of the evidence and whether a rational juror could have found him guilty beyond a reasonable doubt based on

7

the state of the evidence.[8]  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   Flores argues that the evidence is not legally sufficient because it is in equipoise; it is equally balanced between guilt and innocence.   He asserts that that the evidence is equally balanced to support the possibility of guilt—that he was, in fact, intoxicated—and the possibility of innocence—that he was hurt, not intoxicated, and the injury he sustained in the accident caused his behavior.   Because of the "balanced" evidence, Flores argues that a rational juror could neither ignore nor disregard the evidence that shows the equal probability of innocence and, thus, could not have found him guilty beyond a reasonable doubt.   *See id.*

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 2010 WL 3894613, at *5 (characterizing the *Jackson* standard as:   "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt."). "[T]he fact[-]finder's role as weigher of the evidence is preserved through a legal

---

[8] Although the issue of equipoise has traditionally been reviewed in Texas under a factual sufficiency review, *see, e.g., Steadman v. State*, 280 S.W.3d 242, 246-47 (Tex. Crim. App. 2009) ("An appellate court may not find the evidence to be factually insufficient merely because there are 'reasonably equal competing theories of causation.'"); *Goodman v. State*, 66 S.W.3d 283, 286 n.4 (Tex. Crim. App. 2001) (reasoning that "when the evidence is in 'fair equipoise' (meaning that a rational juror could either find for or against a proposition), any one of the [three rational] conclusions [found by the jury] should be upheld by a reviewing court" and, thus, concluding that the evidence is factually sufficient), Flores argues, and the court of criminal appeals now agrees, that our only review should be one of legal sufficiency.   The *Brooks* Court recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."   *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8, *14 (Tex. Crim. App. Oct. 6, 2010) (plurality opinion). Accordingly, we review Flores's claim of evidentiary sufficiency under "a rigorous and proper application" of the *Jackson* standard of review.   *Id.* at *11.

conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson,* 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) ("The jury, in all cases, is the exclusive judge of facts proved and the weight to be given to the testimony . . . ."); *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

We begin the resolution of this issue by addressing Flores's underlying premise, namely that the evidence is in equipoise. We agree that a conclusion of guilt—that Flores was intoxicated—is supported by the evidence. However, we do not agree that fairly balanced evidence, or evidence in fair equipoise, supports a conclusion of innocence—that Flores was hurt, not intoxicated.

Claiming that the State's evidence is balanced to support his innocence as well as his guilt, Flores relies on the officers' testimony—testimony elicited during cross-examination—that head injuries can cause symptoms or acts similar to those caused by intoxication. [9] For example, Trooper Rodriguez agreed that there was evidence that Flores suffered a blow to his head and that a head injury could cause someone to get disoriented, to sway, to be unsteady, to need to be supported, to stagger, to be heavy footed, to slur his speech, to be thick tongued, and to have red eyes and droopy eyelids. However, Trooper Rodriguez also agreed that all of these observations

---

[9] Flores's asserts that it is the State's evidence that is in equipoise and that the balance of that evidence is enough to support his argument. Accordingly, we look only to the State's evidence for our analysis.

were explained logically in this case only if it were assumed that Flores had a head injury. Although Trooper Rodriguez acknowledged that Flores hit his head, he did not testify that Flores had suffered an injurious blow to his head or that he had a head injury that caused his actions that evening. Rather, in his opinion, Flores was intoxicated.

In addition, Deputy Vallejo testified, on cross examination, that he "vaguely remember[ed] that … [Flores] had some kind of injuries" and agreed that Flores was bleeding. When asked, "And as we theorize in this case, if a man was bleeding and had been hurt, that could cause him to swerve a little bit, right?", Deputy Vallejo answered, "Also [correct]." Officer Vallejo agreed that there could be other explanations for Flores's behavior; however, he believed that "between his driving erratically, between his red bloodshot eyes …, from him not responding or complying to anything, what's your name, sir, basic questions,… and [a] smell an odor of alcoholic beverage emitting from the vehicle," Flores was intoxicated.

On cross-examination, Trooper Mendoza also agreed that Flores had blood on his face from minor scratches. He saw blood on Flores's forehead, cheek, and mouth. Trooper Mendoza agreed that a serious bump on the head would cause unsteady balance, slurred speech, and loss of memory "in a major accident, perhaps." Trooper Mendoza testified that after the accident something was wrong with Flores, but that he was intoxicated, not hurt. Trooper testified as follows: "I believe [Flores] drank more than two or three beers because of the way he was, the slurred speech, it was real bad. It was hard to understand when he was trying to yell whatever he was saying. And then his eyes were real bloodshot and he was—his balance was unstable, he kept trying to use

10

stuff to get balanced."

Furthermore, while Flores asserts on appeal, in support of his equipoise argument, that the Cameron County jail system refused to accept him as an inmate because he was bleeding and severely injured, the record reveals that Trooper Rodriguez testified that the jail would not accept Flores without medical clearance because of the lacerations on his head, the bleeding, and the dried blood. Nothing in his testimony suggests that the refusal was based on a severe head injury. And although Flores suggests that the medical report shows "that there were severe head injuries," our review of the medical records reveals that they refer to lacerations, not head injuries, and certainly not severe head injuries. While Flores was taken to the hospital, no serious or life-threatening condition was diagnosed, his facial laceration was cleaned and treated with an adhesive, and he was released in stable condition to the custody of the jail.

We cannot conclude that the above evidence of a head injury, if any, is equally balanced with the above evidence of intoxication. Thus, the evidence of innocence and the evidence of guilt are not in equipoise. Because this underlying premise is not supported by the record, we do not reach Flores's argument that our review should be one of legal sufficiency and that we should determine whether a rational juror could have ignored or disregarded the evidence of innocence and found Flores guilty of DWI beyond a reasonable doubt. Accordingly, we overrule Flores's first issue.

## B. The Charge

In his second issue, Flores contends that the trial court erred when it included the following jury charge instruction: "You are instructed that you may consider the

11

defendant's refusal to submit to a breath test as evidence of intoxication." The charge also defined "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body, or having an alcohol concentration of 0.08 or more." Flores contends that the instruction, when read with the definition of "intoxicated," deprived him of his constitutional right to the presumption of innocence and to trial by jury because it allowed the jury to presume intoxication, and thus guilt, from the mere act of his refusal to provide the breath specimen. He argues this is fundamental error. *See Saldano v. State*, 70 S.W.3d 873, 887-89 (Tex. Crim. App. 2002) (en banc) (enumerating the following "fundamental errors": absence of jurisdiction over the person of the defendant; absence of subject-matter jurisdiction; prosecution under an ex post facto law; denial of the right to counsel; denial of the right to a jury trial; denial of 10 days' preparation before trial for appointed counsel; holding trials at a location other than the county seat; comments by a trial judge that taint the presumption of innocence; and jury charge errors resulting in egregious harm); *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999) ("Under the Due Process Clause of the Fourteenth Amendment, all persons are presumed innocent, and no person may be convicted unless each element of the offense is proved by the prosecution beyond a reasonable doubt."). Flores did not object to the inclusion of this instruction in the charge.

### 1. Applicable Law

The function of the jury charge is to inform the jury of the applicable law and to guide the jury in its application of the law to the case that the jury must decide. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (en banc). In analyzing a jury charge

12

issue, a court first decides whether an error exists. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005) (en banc). If there is an error, we analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether a defendant preserved the error by objection. *Id.* at 743.

When there is no objection to the charge and it is claimed that the incorrect charge violates a constitutional provision, "the applicable standard is that provided by article 36.19 of the [c]ode of [c]riminal [p]rocedure: 'the judgment shall not be reversed … unless it appears from the record that the defendant has not had a fair and impartial trial.'" *Jimenez v. State*, 32 S.W.3d 233, 233 (Tex. Crim. App. 2000) (en banc) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006)); *Hutch*, 922 S.W.2d at 170; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on rehr'g) (en banc) (explaining that where there is no objection to a jury charge, reversal is required only when error is so egregious and created such harm that the appellant "has not had a fair and impartial trial").

## 2. Presumption of Innocence

Flores contends in this second issue is that the complained-of instruction allows for a presumption of guilt based on his refusal to take a breath test. The refusal to take a breath test, however, is not an element of the offense of DWI that must be proven beyond a reasonable doubt. "Intoxication" is the element that must be proven. While the charge instructed the jury that it must find that Flores was intoxicated, the charge only instructed the jury that it *may* consider Flores's refusal to submit to a breath test as evidence of intoxication. The charge contained no instruction, for example, that a breath

13

test refusal was conclusive evidence of intoxication, that such a refusal was per se intoxication, or that, because Flores refused the breath test, the jury must find that he was intoxicated. We cannot conclude that the jury's permissive consideration of Flores's refusal to take a breath test was determinative of intoxication or that the instruction allowed the jury to presume intoxication and thus guilt from Flores's act of refusal. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood . . . may be introduced into evidence at the person's trial.").

In addition, the sixth paragraph of the charge shows that the jury was properly instructed that "[a]ll persons are presumed to be innocent"; that, in order to convict any person of a crime, each element of the offense must be proved beyond a reasonable doubt; and that a defendant need not prove his innocence or produce any evidence at all. The instruction also stated that "[t]he presumption of innocence alone is sufficient to acquit the defendant." In other words, the charge reminded the jury that Flores was presumed to be innocent unless each element, including the intoxication element, of the offense was proven beyond a reasonable doubt.

Considering the charge as a whole, we conclude that the trial court did not deprive Flores of his constitutional right to the presumption of innocence by including the refusal-to-provide-a-breath-sample instruction in the jury charge. Thus, we cannot conclude that there was fundamental error as argued by Flores.

### 3. Comment on the Weight of the Evidence

We note, however, that the court of criminal appeals has held "that a jury

14

instruction informing the jury that it may consider evidence of a refusal to take a breath … test constitutes an impermissible comment on the weight of the evidence." *Bartlett v. State*, 270 S.W.3d 147, 154 (Tex. Crim. App. 2008); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007) (providing that the charge must not express any opinion as to the weight to be accorded to the evidence); TEX. TRANSP. CODE ANN. § 724.061. To the extent Flores asserts this argument, we conclude that error exists because the instruction was a comment on the weight of the evidence. We find, however, having reviewed the entire charge, the state of the evidence, the arguments of counsel, and other relevant information, that such error was not so egregious and created such harm that Flores did not have a fair and impartial trial. *See Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171.

Flores's second issue is overruled.

### III. CONCLUSION

We affirm.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 2nd
day of December, 2010.

15